T.C. Memo. 2005-120


UNITED STATES TAX COURT


ALAN D. LENZEN AND DIANNE LENZEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROYAL AMERICAN FOODS, INC., Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos. 7422-03, 7423-03.      Filed May 24, 2005.


<u>Gregory R. Troy</u>, for petitioners in docket No. 7422-03.

<u>Daniel W. Schermer</u>, for petitioner in docket No. 7423-03.

<u>Helen H. Keuning</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined a deficiency of $46,666 and an accuracy-related penalty under section 6662[1] of $9,333.20 in petitioners Alan D. and Dianne Lenzen's (Mr. Lenzen and Mrs. Lenzen or collectively, the Lenzens) Federal income tax for 1999. Respondent also determined a deficiency of $34,270 and an accuracy-related penalty under section 6662 of $6,854 in petitioner Royal American Foods, Inc.'s (RAF) Federal income tax for 1999.  In 1999, Mr. Lenzen held the majority of the stock of RAF.  After concessions, there are four issues remaining for decision.

First, was RAF entitled to deduct the expenses disallowed by respondent that remain in dispute?  Because the expenses at issue were personal expenses of the Lenzens, we hold that RAF may not deduct them.

Second, were RAF's payments of the Lenzens' personal expenses constructive dividends to the Lenzens?  Because the payments were not loan repayments or additional compensation, we hold that they were constructive dividends.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Third, did the Lenzens have unreported gambling losses offsetting their unreported gambling income in 1999? We hold that they did not.

Fourth, are petitioners liable for accuracy-related penalties under section 6662? We hold that they are.

FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. At the time the petition was filed, the Lenzens resided in Prior Lake, Minnesota, and RAF's principal place of business was in Le Center, Minnesota.

In 1991, Mr. Lenzen and James A. Schoenecker incorporated RAF under Minnesota law. RAF produced a variety of gourmet desserts, specializing in cheesecakes, marketed under the trade name "Lady Dianne's Desserts". RAF's products were produced in a plant in Le Center, Minnesota, and were marketed in several regions of the country by sales representatives to grocery stores, restaurants, and other food distributors. In 1999, Mr. Lenzen and Mr. Schoenecker were the only two officers and directors of RAF. Mr. Lenzen owned 59.5 percent of RAF's stock and Mr. Schoenecker owned 25.5 percent of RAF's stock in 1999. In addition, Steven Lenzen and David Lenzen, the Lenzens' two sons, and Steven Countryman were employees and 5-percent shareholders of RAF in 1999. RAF issued only common stock. In

1999, RAF did not declare or authorize a dividend for any shareholders.  In February 2002, RAF was sold by its shareholders.

A.    RAF's 1999 Return and Audit

RAF filed Form 1120, U.S. Corporation Income Tax Return, for 1999.  RAF reported that it did not declare a dividend in 1999.  Among its deductions on the 1999 return, RAF listed $654,318 as "Sales Expense" (the sales expense deduction).  RAF also reported that it had loans from its shareholders of $535,544 at the end of 1999 and interest expense totaling $157,125 during 1999.

In April 2002, respondent commenced an audit of RAF's 1999 return.  During the audit, respondent's agent requested that RAF provide

> Any and all records relating to the "Sales Expense" in the amount of $654,318.00 claimed for the period ended December 31, 1999.  The records may include but are not limited to cancelled checks, invoices, receipts, bank and credit card statements, workpapers, and internal vouchers, statements or claims.

In response, RAF provided records relating to an American Express corporate credit card (corporate card) issued in RAF's name.  The records showed descriptions of each item charged, a miniature copy of each charge slip, the date and amount of each purchase, the vendor, and the individual who made each purchase.  No other documentation was provided with respect to the charges made on the corporate card.  RAF also provided documentation prepared by

RAF's accountant showing loans to RAF from Mr. Lenzen and Mr. Schoenecker and RAF's interest expense on the loans.

On February 12, 2003, respondent issued RAF a notice of deficiency disallowing $100,793 of the sales expense deduction. Specifically, respondent disallowed charges of $62,392 on the corporate card, charges of $1,807 on an American Express Corporate Optima Platinum card (Optima card), and a series of miscellaneous expenses totaling $36,594.43 (miscellaneous expenses). Of the disallowed amounts charged to the corporate card, $27,202.50 was charged by Mr. Lenzen, $28,158.09 was charged by Mrs. Lenzen, $5,439.01 was charged by Steven Lenzen, and $1,593.40 was charged by David Lenzen.

Respondent has conceded that all the Optima card charges, miscellaneous expenses, and corporate card charges made by Steven Lenzen and David Lenzen were properly deducted and that $7,687 of Mr. Lenzen's corporate card charges were properly deducted. Respondent maintains that all of Mrs. Lenzen's corporate card charges, $28,158, and the remainder of Mr. Lenzen's corporate card charges, $19,516, were for personal expenses of the Lenzens.

B.    The Lenzens' 1999 Return

The Lenzens filed a joint Form 1040, U.S. Individual Income Tax Return, for 1999. On their 1999 return, the Lenzens reported interest income of $49,598 from RAF. The Lenzens' 1999 return also indicates that they received gambling income of $17,204 and

corresponding gambling losses of $17,204 in 1999. Mrs. Lenzen's occupation was listed as "homemaker" on the Lenzens' 1999 income tax return. Mrs. Lenzen did not receive a Form 1099-MISC or Form W-2, Wage and Tax Statement, from RAF and was not on RAF's payroll in 1999.

On February 12, 2003, respondent issued a notice of deficiency to the Lenzens with respect to 1999. Respondent determined that Mr. Lenzen received constructive dividends from RAF in the full amount of the disallowed sales expense deduction, $100,793. Respondent has conceded that all but $47,674 was not constructive dividend income to the Lenzens. Respondent also determined, and the parties stipulated, that the Lenzens received $13,619 in gambling income in 1999 in addition to the $17,204 of gambling income reported on their return. Respondent did not disallow the Lenzens' claimed $17,204 gambling loss.

Steven Lenzen and David Lenzen each filed individual tax returns for 1999; neither was a dependent of the Lenzens in 1999. Additionally, neither of their 1999 returns reflected receipt of dividend income. Respondent did not issue a notice of deficiency to either Steven Lenzen or David Lenzen for 1999.

OPINION

I.  Burden of Proof

Petitioners argue that respondent bears the burden of proof under section 7491(a)(1) because petitioners provided credible evidence that the payments made by RAF on behalf of the Lenzens were loan repayments.  Under section 7491(a)(1), the Commissioner bears the burden of proof if a taxpayer "introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer".  Section 7491(a)(2) limits the shifting of the burden of proof to situations in which a taxpayer has complied with substantiation requirements under the Internal Revenue Code (the Code), has maintained all records required by the Code, has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews, and, in the case of a corporation, partnership, or trust, meets the net worth requirement of 28 U.S.C. sec. 2412(d)(2)(B).  Sec. 7491(a)(2)(A)-(C).

First, petitioners have not presented credible evidence that the payments by RAF of the Lenzens' personal expenses were repayments of loans Mr. Lenzen made to RAF.  The only evidence petitioners presented regarding the existence of the loans was an illegible copy of a ledger and testimony that the loans were made.  Petitioners presented no evidence that the credit card payments were intended to repay those loans.

Next, petitioners have not shown that they fulfill the requirements of section 7491(a)(2). RAF has not shown that it meets the net worth requirement of section 7491(a)(2)(C). In addition, petitioners have not shown that they complied with the Code's substantiation requirements. Petitioners argue that they did not provide substantiation to the revenue agent in RAF's audit because he did not specifically request substantiation of the disallowed corporate card items. However, under section 7491(a)(2)(A), petitioners must show that they complied with the Code's substantiation requirements in general, not simply in response to an audit. The charges at issue include those made at restaurants, hotels, airlines, gas stations, clothing stores, and general retail stores. Petitioners provided credit card summaries of these charges, showing only the vendor, the type of services offered by the vendor, e.g., "Gas/Misc" and "Food/Bev", and the amount of the charge. These summaries do not provide the substantiation required by section 274 for entertainment and travel expenses, such as the date and business purpose of each expense and the business relationship to the person being entertained. The statement summaries also do not satisfy the substantiation requirement under section 162 that a taxpayer who is related to his employer under section 267(b) keep sufficient records "to enable the Commissioner to correctly determine income

tax liability." Sec. 1.162-17(d)(1)(iii), Income Tax Regs.[2] Further, Mr. Lenzen testified that he did not keep records of his gambling losses. Petitioners' accountant testified that RAF did not give him substantiation for the sales expense deduction and he was not aware of any substantiation in existence for the corporate card charges. We hold that neither the Lenzens nor RAF has shown that section 7491(a) applies to shift the burden of proof to respondent.

Petitioners also argue that the burden of proof shifted to respondent under Rule 142 because respondent has conceded more than half the deficiencies determined in the notices of deficiency. The burden of proof is not placed on the Commissioner because he concedes a portion of the amount set forth in the notice of deficiency. See Forte v. Commissioner, T.C. Memo. 1991-36; Natl. Oil Co. v. Commissioner, T.C. Memo. 1986-596 (stating: "To charge respondent, as a consequence of such concessions, with the burden of going forward with the evidence to prove any amounts not conceded, would discourage respondent from settling issues on the basis of information obtained in discovery."). As petitioners have pointed to no new matters, increases in deficiencies, or affirmative defenses

---

[2]Mr. Lenzen, who owned 59.5 percent of RAF's stock in 1999, is related to RAF for this purpose. See sec. 267(b).

raised by respondent, the burden does not shift to respondent under Rule 142.[3]

II.  Corporate Card Charges

A.  Ordinary and Necessary Business Expenses

Petitioners contend that the charges at issue qualified as business expenses of RAF.  Section 162 generally allows a deduction for ordinary and necessary business expenses.  In general, an expense is ordinary under section 162 if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful to the taxpayer's trade or business.  Commissioner v. Tellier, 383 U.S. 687 (1966).  If an expenditure is primarily motivated by personal considerations, no deduction for it will be allowed.  See Henry v. Commissioner, 36 T.C. 879, 884 (1961).  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that it is entitled to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This includes the burden of

---

[3]Before and during trial, petitioners made arguments with respect to shifting the burden of proof to respondent under sec. 7491.  At the conclusion of trial, petitioners orally moved that the burden be shifted to respondent.  The Court requested that the parties address this issue in their briefs.  For the reasons discussed supra, petitioners' oral motion will be denied.

substantiation. <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

The Lenzens used the corporate card for purchases at restaurants, gas stations, clothing stores, hotels, and general retail stores, among others. Mr. Lenzen testified that he was not able to provide business reasons or substantiation for the charges at issue because either they were for personal expenses or he could not recall whether they were for business expenses. Mrs. Lenzen did not testify at trial. Although Mr. Lenzen testified that Mrs. Lenzen did some promotional work for RAF, including sales trips, he also stated that it was likely that almost all of the charges made by Mrs. Lenzen on the corporate card were for personal expenses. Petitioners did not present specific evidence with respect to the charges at issue that would show that any of them were not personal. Without more than vague testimony, we cannot conclude that any of the charges at issue were ordinary and necessary business expenses of RAF. Petitioners have not met their burden of showing that any of the remaining charges were not personal expenses of the Lenzens.

B.   <u>Characterization of the Payments of Personal Expenses</u>

Respondent argues that RAF's payments of the Lenzens' personal expenses were constructive dividends to Mr. Lenzen as a shareholder of RAF. Petitioners first argue that RAF's payments were repayments of amounts Mr. Lenzen lent to RAF.

For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment." Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). The parties' intent that the loan be repaid is the controlling factor in determining whether payments should be termed loans. See Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968). Courts have focused on certain objective factors to identify bona fide loans, including: (1) The existence or nonexistence of a debt instrument; (2) provisions for security, interest payments, and a fixed payment date; (3) treatment of the funds on the corporation's books; (4) whether repayments were made; (5) the extent of the shareholder's participation in management; and (6) the effect of the "loan" on the transferee's salary. Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970). When the individual is in substantial control of the corporation, special scrutiny of the situation is necessary. Id.; Roschuni v. Commissioner, 29 T.C. 1193, 1202 (1958), affd. 271 F.2d 267 (5th Cir. 1959).

Mr. Lenzen and Mr. Schoenecker made bona fide loans to RAF. RAF's 1999 corporate income tax return and financial statements reflect that $535,544 was owed to stockholders at the end of

1999.  Mr. Lenzen and Mr. Schoenecker credibly testified that they lent money to RAF over the years and that they were paid interest on the loans.  They documented these loans and RAF's payments of interest and principal on a ledger for each year. The loans were repaid in full as part of the sale of RAF in 2002.

However, the record does not show that RAF's payments of the Lenzens' personal expenses were intended to be repayments of Mr. Lenzen's loans to RAF.  Mr. Lenzen and his accountant admitted that the corporate card payments were not recorded as loan repayments or interest payments on the 1999 loan ledger or in any of RAF's corporate records.  Mr. Lenzen testified that he intended to record them that way but "I just procrastinated and I never did it."  Petitioners' accountant had no knowledge that RAF paid any of the Lenzens' personal expenses.  Most importantly, RAF claimed as business expenses all of the Lenzens' corporate card charges.  Mr. Lenzen and RAF did not attempt to identify which charges were purportedly loan repayments until trial. Petitioners' current characterization of the unexplained charges as loan repayments contradicts petitioners' actions at the time the payments were made, and we do not accept petitioners' current position.  See, e.g., Noble v. Commissioner, 368 F.2d 439, 443-444 (9th Cir. 1966) (shareholders' alteration of corporate records 2 years after payment was not sufficient to properly

characterize payments as loan repayments), affg. T.C. Memo. 1965-84.

Petitioners alternatively argue that the payments should be treated as additional compensation. Whether amounts are paid as compensation turns on the factual determination of whether the payor intends at the time that the payment is made to compensate the recipient for services performed. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 92 (2000), affd. 299 F.3d 221 (3d Cir. 2002). The fact that petitioners now choose to characterize the payments by RAF of the Lenzens' personal expenses as compensation does not establish that the payments were compensation in fact. See King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 514 (1992).

The facts of this case do not support petitioners' assertion that RAF intended the payments of the Lenzens' personal expenses to be additional compensation. Petitioners did not characterize the payments as compensation on their 1999 income tax returns and have not since filed amended returns correcting the characterization. Mrs. Lenzen was not an employee of RAF in 1999. In addition, no evidence is in the record regarding whether Mr. Lenzen's compensation, with or without the payments by RAF, was reasonable in 1999. The reasonableness of compensation is an essential element in resolving compensation versus dividend issues. See id. at 515. The payments by RAF of

the Lenzens' personal expenses on the corporate card should not be treated as additional compensation.

Lastly, petitioners argue that because RAF did not declare a formal dividend or make payments ratably to its shareholders in proportion to their interests, the payments of the Lenzens' personal expenses cannot be characterized as constructive dividends.[4]  We disagree.  A dividend is any distribution of property made by a corporation to its shareholders out of its earnings and profits.  Sec. 316(a).  The test for a constructive dividend is twofold:  (1) The expense must be nondeductible to the corporation; and (2) it must represent some economic gain, benefit, or income to the shareholder.  See Meridian Wood Prods., Inc. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984).  The payments here provided economic benefit to the Lenzens by paying their personal expenses and are not deductible by RAF as compensation or business expenses.  The fact that no dividend is formally declared does not preclude the finding of a dividend in fact.  See Noble v. Commissioner, supra at 442.  Also, the disbursement of corporation earnings to a shareholder may constitute a dividend to the shareholder notwithstanding that it is not in proportion to stockholdings or that some shareholders do not participate in its benefits.  Baird v. Commissioner, 25

---

[4]Petitioners do not dispute that RAF had sufficient earnings and profits to cover the amounts in question.

T.C. 387, 395 (1955); <u>Thielking v. Commissioner</u>, T.C. Memo 1987-227, affd. without published opinion 855 F.2d 856 (8th Cir. 1988).  RAF cites <u>Murphy v. Country House Inc.</u>, 349 N.W.2d 289 (Minn. Ct. App. 1984), for its assertion that Minnesota law prohibits disproportionate constructive dividends.  However, that case held that bonuses paid to shareholder-employees constituted disproportionate dividends and that the shareholder who was not paid was entitled to his share of the dividend.  <u>Id.</u> at 293.  We conclude that RAF's payments of the charges at issue were constructive dividends to Mr. Lenzen as a shareholder of RAF.

III.  <u>The Lenzens' Unreported Gambling Income</u>

The Lenzens admit that they received $13,619 of unreported gambling income in 1999.  They claim that they suffered an equal amount of unreported gambling losses and are not liable for income tax on the additional gambling winnings.  The Lenzens did not present at trial any records of the additional winnings or losses.

Section 165(d) allows a deduction for gambling losses only to the extent of gambling winnings.  The Lenzens have the burden of proving that their alleged gambling losses were in fact sustained.  See <u>Green v. Commissioner</u>, 66 T.C. 538, 544 (1976).  Section 6001 and the regulations thereunder require taxpayers to keep permanent records sufficient to substantiate the amounts of gross income, deductions, and credits shown on their income tax

returns.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Mr. Lenzen testified that he kept the forms given to him by the casinos when he won money, but he "missed some of them" when he gave the accountant the information necessary for completing his tax returns.  He kept no records of the losses he sustained.  He admitted that he could have estimated the amounts from bank statements, but he did not.

In some cases, we have allowed losses based on estimates where we are convinced a loss was sustained.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  There must be sufficient evidence in the record to prove that a loss was in fact sustained before we apply the Cohan rule.  Polyak v. Commissioner, 94 T.C. 337, 345 (1990); Schooler v. Commissioner, 68 T.C. 867, 871 (1977).  The Lenzens' accountant testified that he reported the figures on the Lenzens' 1999 return on the basis of the Lenzens' oral statements to him and without substantiation.  Mr. Lenzen's testimony that he has never been a net winner at the casinos in any year is the only evidence in the record that the Lenzens sustained gambling losses in addition to those reported on their return.  Mr. Lenzen's testimony, uncorroborated by any documentation or even the testimony of Mrs. Lenzen, does not convince us that a loss was in fact sustained in 1999 and does not provide any details or evidence with which we might estimate the Lenzens' additional losses.  Therefore, the

Lenzens are liable for income tax on additional gambling income of $13,619 for 1999.

IV. Penalties

Section 6662 imposes an accuracy-related penalty on the portion of an underpayment attributable to negligence or disregard of the rules or regulations. Sec. 6662(b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); Gowni v. Commissioner, T.C. Memo. 2004-154. Failure to maintain adequate books and records or to substantiate items properly also constitutes negligence. Sec. 1.6662-3(b), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Id. An accuracy-related penalty will not be imposed with respect to any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c).

We determined above that petitioners did not maintain the substantiation required by sections 162, 274, and 6001 for the sales expense deduction. In addition, Mr. Lenzen admitted that he did not retain adequate records of his gambling winnings and losses. Petitioners have not shown that they had reasonable cause or acted in good faith in deducting the Lenzens' personal expenses as business expenses of RAF and in underreporting the

Lenzens' income from gambling and constructive dividends on their 1999 returns.  Therefore, we sustain respondent's determination that both RAF and the Lenzens are liable for accuracy-related penalties under section 6662 for 1999.

To reflect the foregoing and concessions by the parties,

<u>An appropriate order will be issued, and decisions will be entered under Rule 155</u>.