Patrick HANDY, Patricia Handy, and Edith Handy, Respondent,

v.

Richard E. GARMAKER, Appellant (51326), Respondent (51322).

and

Bergstedt Realty Co., and William R. Bergstedt, Appellants (51322), Respondents (51326).

Nos. 51322, 51326.

Supreme Court of Minnesota.

Aug. 31, 1982.

Rehearing Denied Oct. 21, 1982.

Popham, Haik, Schnobrich, Kaufman & Doty, Frederick S. Richards, and Michael T. Nilan, Minneapolis, for Bergstedt Realty Co., et al.

Maun, Green, Hayes, Simon, Murray & Johanneson, Richard D. Donohoo and Gregory J. Holly, St. Paul, Gustafson & Adams and Mark G. Ohnstad, Edina, for Garmaker 51326.

Sax & Dove, St. Paul, for Handy.

Gustafson & Adams and Mark G. Ohnstad, Edina, for Garmaker and Maun Firm 51322.

OTIS, Justice.

This is an appeal from a decision of the district court finding appellants Richard Garmaker and William R. Bergstedt liable to respondents Patrick Handy, Patricia Handy, and Edith Handy, for failure to disclose Garmaker's dual agency in representing both the Handys and their vendee in a real estate transaction. We affirm.

The essential facts which were found by the trial court and which are governing may be briefly summarized.

During the times here relevant Garmaker is deemed to have been a real estate salesman employed by Bergstedt as a result of Bergstedt's continuing to sign Garmaker's license renewal in March and July 1977, although they had terminated their association in November 1976. While Bergstedt was found to have had no knowledge of the transactions here involved, the court held that his failure to notify the Commissioner of Securities and Real Estate within ten days of Garmaker's termination, imposed liability on Bergstedt under Minn.Stat. § 82.20, (1980).[1] However, the court grant-

---

1. Minn. Stat. § 82.20, subds. 5, 6, and 9 provide in part as follows:

    Subd. 5. Responsibility. Each broker shall be responsible for the acts of any and all of his sales people while acting on his behalf as his agents. * * *

    Subd. 6. Issuance of license; salesperson. A salesperson must be licensed to act on behalf of a licensed broker and may not be licensed to act on behalf of more than one broker in this state during the same period of time. The license of each real estate salesperson shall be mailed to and remain in the possession of the licensed broker with whom he is or is to be associated until canceled or until such licensee leaves such broker.

    Subd. 9. Terminations; transfers. When a salesperson terminates his activity on behalf

ed Bergstedt full indemnity against Garmaker for any amounts collected against him by respondents.

In November 1976 when the Handys were owners of a 72-unit apartment building called Shoreview Estates at 4045 Hodgson Road, in Shoreview, Garmaker approached them for the purpose of finding a buyer for their property. Shortly thereafter on December 10, 1976, unbeknownst to the Handys, Garmaker entered an agreement with one James R. Lund whereby Garmaker undertook to represent Lund in the purchase of Shoreview Estates.

Twelve days later Garmaker contracted with the Handys to find a buyer for the property at a fixed commission which was ultimately reduced to $24,870.50. On that same day Garmaker arranged a sale from the Handys to Lund for $1,425,000. The court found that at no time until after the closing on June 7, 1977, did the Handys have any knowledge of the duplicity of Garmaker's role.

On January 28, 1977, Lund advised Garmaker that he wished to withdraw from the purchase agreement. As an inducement to complete the purchase, Garmaker paid Lund the sum of $7,000. None of this information was furnished the Handys.

On February 25, 1977, Lund sold Shoreview Estates to Major West Properties, Inc. for a price ultimately agreed to be $1,445,000. Garmaker was the sole owner and president of Major West. Thereafter, sometime before May 30, 1977, Major West negotiated a sale to Shoreview Estate's Limited Partnership for $1,505,000. Garmaker owned a 18½% interest in that partnership.

Finally, on June 7, 1977, simultaneous closing occurred between the Handys, Lund, Major West, and Shoreview Estates partnership.

It was Handy's testimony that it was not until June 21, 1977, that he discovered Lund had sold to Garmaker as president of Major West. The trial court accepted respondents' contention in this regard, explaining that their presence at the joint closing did not necessarily put them on notice, with these observations:

In this case defendant Garmaker purchased the property indirectly through Mr. Lund and Major West during the executory period of the contract and his agency. The Court is aware that the evidence showed that the plaintiffs received a check for $126,129.10 from Major West Properties, Inc., at the closing, and subsequently cashed this check. * * * The plaintiffs were also unmistakably present when the Lund-Major West and Major West-Shoreview Estates transactions were completed on June 7. But in view of the complexity of these transactions and the conduct of the plaintiffs and defendant Garmaker prior to and subsequent to the closings, the Court believed that the plaintiffs did not know the nature of Mr. Garmaker's involvement. Perhaps they should have known, but that is immaterial. Defendant Garmaker was under the absolute duty of the law in this state to clearly reveal his actions to his principal, and this he failed to do.

The trial court granted judgment on behalf of respondents against both Garmaker and Bergstedt for the commission already paid Garmaker in the sum of $15,000; relieved respondents of any further obligations to pay the balance of $9,870.50; granted judgment against appellants for $80,000 representing the profits lost by Handy in selling to Lund for $1,425,000 whereas Major West subsequently realized $1,505,000; and granted Bergstedt indemnity against Garmaker as well as $5,000 attorneys fees.

An experienced judge, after a trial lasting from June 7 to June 15, 1979, made extensive findings which are not to be lightly set aside, a crucial one being that at no time did Garmaker reveal to Handy his representation of Lund when he contracted with Handy on December 22.

of a broker, the salesperson's license shall be ineffective. Within ten days of such termination the broker shall notify the commissioner in writing thereof, and shall return to the commissioner the license of the salesperson. * * *

This finding is totally consistent with Garmaker's quite obvious plan of action. Instead of buying directly from Handy he stood to earn a commission of $24,870, and thereafter either earn another commission from Lund, or, as it developed, purchase the property himself from Lund at the lowest possible price. It certainly was not to Garmaker's advantage to tell Handy before contracting with him that he already had an agreement to represent Lund, and it is inconceivable that Handy would have approved such an arrangement had he been told of it.

■■■ 1. Whatever may have been Garmaker's duty to Handy after Lund agreed to buy Shoreview Estates on January 25, the fact remains that unbeknownst to Handy, Garmaker was acting in a duplicitous role in the sale to Lund, which under elementary principles of law and equity should at the very least forfeit his right to a commission. *Anderson v. Anderson*, 293 Minn. 209, 197 N.W.2d 720 (1972); *Tarnowski v. Resop*, 236 Minn. 33, 51 N.W.2d 801 (1952); *Doyen v. Bauer*, 211 Minn. 140, 300 N.W. 451 (1941).[2]

The precise language of the contract with Handy states:

RICHARD GARMAKER:
~~MAJOR WEST PROPERTIES~~, 600 Co. County Road 18, Suite 110, St. Louis Park, Minnesota 55426, agrees to accept and the undersigned Seller(s) agree to pay, the total amount of $24,870.50 as sales commission, for the sale of property located at: 4045 Hodgson Road, Shoreview, Minn. between Patrick M. Handy, Patricia A. Handy, and Edith M. Handy and James R. Lund.

$15,000 at closing.

Balance Jan. 2, 1978 with interest at 8% from date of closing.
It is further understood and agreed between the undersigned party(s) that said sales commission will be paid as indicated above.

~~MAJOR WEST PROPERTIES~~    SELLER(S):
By /s/ Richard E. Garmaker    By /s/ Patrick M. Handy
    By /s/ Patricia A. Handy
    By /s/ Edith M. Handy

2. Department of Commerce Securities Division Rule § 1.41508 provides:

A. Fraudulent, Deceptive or Dishonest Practices. The methods, acts or practices set forth herein shall be presumed fraudulent, deceptive or dishonest when engaged in by a real estate broker or salesperson and shall constitute grounds for denial, suspension or revocation of the license of such person, or censure of said licensee:

The dissent seems to adopt the view that because of the limited purpose of the agency no fiduciary relation existed between Garmaker and Handy and that it was therefore proper for Garmaker to represent both parties without revealing that information to the seller, citing *Greer v. Kooiker,* 312 Minn. 499, 253 N.W.2d 133 (1977). That case, however, makes no reference whatever to the question of undisclosed conflicts of interest. The trial court's memorandum states the case well:

There is conflicting testimony as to whether Mr. Garmaker disclosed his representation of the Lunds to the plaintiffs. Mr. Garmaker and Mr. Lund testified that the dual representation was disclosed prior to December 22, 1976, but the plaintiffs deny this. The Court has found, based on its assessment of the credibility of the witnesses and the subsequent conduct of the parties, that the plaintiffs were never informed by Mr. Garmaker that he represented the Lunds.

It was the duty of defendant Garmaker, as plaintiffs' agent in selling Shoreview Estates, to inform them that he was also representing the Lunds. This is not a case where the agent had no opportunity to exercise discretion; Mr. Garmaker had responsibilities to both parties, and his failure to inform the sellers that he also was acting for the buyers could well have affected the plaintiffs' interests. Whether it adversely affected their interests or not, the employment contract between the Handys and defendant Garmaker is voidable at the election of the principals who were ignorant of the double representation, and the agent may not recover for his services. *Webb v. Paxton,* 36 Minn. 532, 32 N.W. 749 (1887); *Anderson v. Anderson, 293 Minn. 209, 197*

  *   *   *   *   *   *

(4) acting on behalf of more than one party to a transaction without the knowledge and consent of all parties thereto;

  *   *   *   *   *   *

4 MCAR § 1.41508(A)(4) (1978) (interpreting Minn. Stat. § 82.27, subd. 1(b) (1980)).

N.W.2d 720 (1972). This inflexible rule does not depend on fraud or actual injury, but is founded upon the fact that the two employments are incompatible. *Webb v. Paxton, supra; Olson v. Pettibone,* 168 Minn. 414, 210 N.W. 149 (1926). Defendant Garmaker cannot recover the balance of his commission under the December 22, 1976 agreement. Further, plaintiffs are entitled to recover the $15,000 already paid as commission under that agreement. *See, Bakke v. Keller,* 220 Minn. 383, 397, 19 N.W.2d 803, 810 (1945).

Clearly, it was Garmaker's duty to promptly advise Handy of his dual role and of the fact he was obliged to pay Lund $7,000 to prevent him from breaching his contract to buy from Handy. *Village of Burnsville v. Westwood Co.,* 290 Minn. 159, 189 N.W.2d 392 (1971).

The trial court had a right to find, and did find, that from the inception Garmaker was guilty of self dealing. No sooner had Garmaker persuaded Lund to consummate the transaction with Handy but he was negotiating with Lund to buy the property for himself, and ultimately did so. The fact that he sold to Lund in December for $1,425,000, bought from Lund in February for $1,445,000 and within 90 days sold to Shoreview partnership in which he had an 18½% interest for $1,505,000 is persuasive evidence of something less than single-minded dedication to the best interests of his principal.

The duty owed by a real estate agent to his principal has long been settled in this state. The facts in *Holmes v. Cathcart,* 88 Minn. 213, 92 N.W. 956 (1903), bear a striking similarity to the facts in this case. In *Holmes* the agent failed to disclose to the owner facts which would have made the selling price considerably higher. This court held that the fact the owner received what she asked for did not foreclose her right to recover damages for fraud. In so ruling we stated:

> [The agent] is bound to the exercise of the most perfect good faith, and to keep his principal informed of facts coming to his knowledge affecting his rights and interests. If, after receiving instructions to sell property on certain specified terms, the agent learns that other and more advantageous terms can be obtained, it is his plain duty, and he is under every legal and moral obligation, to communicate the facts to the principal, that he may act advisedly in the premises.

*Id.* at 216, 92 N.W. at 957.

This court went on to state the rule adopted in *Hegenmyer v. Marks,* 37 Minn. 6, 32 N.W. 785 (1887) as follows:

> Upon this contract of agency, we are of the opinion that when the agent learned of a fact affecting the value of the property, and of which fact he knew the principal was ignorant when she fixed the price, and if the agent had reason to believe that, had she known the fact, she would have fixed a higher price, then good faith towards his principal required him, and it was his legal duty, to disclose the fact to her before he proceeded to sell, so that she might, if so disposed, fix the selling price in accordance with the actual condition of things. This being so, his selling upon the basis of the price first fixed, without disclosing to her the fact he had learned, was, of course, a fraud upon her. That case is in accord with the unanimous voice of the authorities.

88 Minn. at 216, 92 N.W. at 957.

Subsequently in *Olson v. Pettibone,* 168 Minn. 414, 417, 210 N.W. 149, 150, (1926) we discussed the owner's right to relief where no prejudice is shown, stating as follows:

> [W]hen it comes to a case of double agency, the principal who did not know that the agent in his employ was also the agent of the other party to the contract has the absolute right to repudiate the transaction upon the discovery of the truth. An agent stands in a fiduciary relation to this principal and cannot be allowed to assume a position which might influence him to antagonize the interests of his employer. A person cannot serve two masters having opposing interests in a transaction. So as a matter of public policy it is generally held that a deal

conducted wholly or in part by an agent of one of the parties who at the same time acted for the opposite party may be rescinded by the one ignorant of the double employment without showing any injury or intent to deceive. Rescission is his absolute right.

The principles we discussed in *Olson* were reiterated in *Tarnowski v. Resop,* 236 Minn. 33, 36–7, 51 N.W.2d 801, 802–03 (1952), where we said that all profits made by an agent in the course of an agency belong to the principal, whether they are the fruits of performance or the violation of an agent's duty, and the fact that the principal suffered no damage did not affect his right to recover against the agent.

Finally more recently in *Anderson v. Anderson,* 293 Minn. 209, 197 N.W.2d 720 (1972) we again applied the rule that where an agent represents both seller and buyer without a full disclosure of his dual agency he forfeits his right to compensation. In so holding we stated:

> These consequences follow even though the principal ignorant of the duplicitous agency cannot prove actual injury to himself or that the agent committed an intentional fraud. Nothing will defeat the principal's right or remedy except his own prior consent or ratification after full disclosure of all the facts.

*Id.* at 216, 197 N.W.2d at 724 (citing *Olson v. Pettibone, supra* ).

■ Concerning the June 7, 1977 closing we are of the view that the fact Handy completed the closing should not forfeit his right thereafter to recover the commission he paid to Garmaker and the profit Garmaker realized from the sale to his partnership. Handy at that point had no real options. He had divested himself of title by agreeing to sell to Lund, who if not entirely innocent, had no fiduciary obligation to Handy as Garmaker did.

■ 2. The liability of Bergstedt presents a more difficult dilemma. He is charged with vicarious liability for failing to file notice of Garmaker's termination as an agent, Minn. Stat. § 82.20, subds. 5, 6, and 9. While the penalty for violating the statute seems unduly harsh in view of the fact he had no knowledge of Garmaker's activities, took no part in any of the transactions, and is otherwise blameless, under the clear language of the statute as well as common law principles he continued to hold himself out as Garmaker's employer and must accept responsibility for Garmaker's conduct.

Affirmed.

TODD, Justice (dissenting).

I dissent from the majority opinion. I have no quarrel with the legal principles enunciated in the majority opinion as to the duties and obligations of real estate agents to their clients. If this was such a case I would join the majority opinion. The problem with this case is that both the trial court and the majority opinion misstate the evidence and the facts developed in the trial. First and foremost, this was not a real estate listing contract between Handys and Garmaker. Handys had purchased the subject property in June of 1976 for $1,212,-000. In November of 1976, Garmaker called Handys asking if they would be interested in selling the property for the sum of $1,425,000. Handys jumped at the opportunity to make a $213,000 profit in six months time. As a result of this phone conversation, Handys and Garmaker entered into the agreement quoted in the majority opinion. In this agreement the Handys agreed to pay Garmaker a commission of $24,870.50 for selling the subject property to James R. Lund. This was not a real estate listing agreement, but a simple contract between Handys and Garmaker who happened to be a real estate agent, and under Minnesota law was required to be a licensed broker in order to collect a commission. Also soon after this Handys executed an exclusive listing agreement with Real Estate Dynamics represented by Lee Bakewell.[1] The listing agreement specifically excluded the possible sale to Lund and to

---

1. The record in this case fairly indicates that this entire litigation was promoted by Mr.

Bakewell who lost a real estate commission because of Handys' decision to sell to Lund.

clients of another realtor friend of the Handys. The listing agreement to Bakewell excluded only the sale to Lund and not to any other client of Garmakers, whereas, the exclusion to the other realtor obviously listed any sales that he would make, again indicating that Handys recognized that they had a different type of contract with Garmaker. Of even greater significance is the fact that Bakewell produced a purchaser willing to pay more money than the agreement provided by Garmaker with Lund, but Handys rejected it because they liked the terms of Garmaker's arrangement better. At the time Lund signed the earnest money agreement he fully intended to purchase the property. Subsequently, circumstances dictated that he might forfeit his earnest money and drop the sale. It is at this point that Garmaker made an arrangement with Lund to contribute $7,000 of his commission to Lund if he would go through with the sale so that Garmaker would have a chance to resell it to another group that he would form. There can be no question that under these facts Handys knew that Lund was buying the property originally for a set price. It would have been no different to their judgment and decision if any other person was named as a purchaser or if Garmaker himself was named as a purchaser. Their decision was to sell for $1,425,000. Further the evidence is undisputed that prior to the closing Lund told the Handys that he was receiving $7,000 from Garmaker as part of the closing of the transaction. Further, it is undisputed that various people, other than Lund, visited the property and examined the property for purposes of purchasing and these visits were known to the Handys prior to the closing. Further, at the closing, which lasted some six hours, and included numerous people, every person present, except Handys, testified that they knew Lund was not buying the property and that Garmaker was purchasing the property and had to arrange his own financing. The majority opinion is premised on three events. (1) that there was a general real estate listing contract; (2) that Handys didn't know about the payment to Lund, and (3) that Handys didn't realize at the closing that Garmaker was the purchas-er. The first two of these events are undisputed in the record and are directly opposite of the view taken by the trial court and the majority opinion. The third factor is disputed only by Handys. Thus, we have a situation where a party who happens to be a real estate broker arranges a sale of property to a named individual for a set fee. The contract is performed in accordance with all of its terms; the seller rejects a better contract; is present at a closing where everybody else knows what is going on except him, and then subsequently sues and the trial court and the majority opinion not only disallows the commission but allows subsequent profits on the resale. In my mind the only fraud being perpetrated here is by the Handys. They see an opportunity for quick profit; a disgruntled realtor convinces them that they have an opportunity to sue for further profit and the courts become an able assistant to the perpetration of this fraud. The noble effort of requiring real estate agents to use the utmost good faith in dealing with their clients is not added to one bit by this opinion and misses completely the evidence and facts developed in this case. I would reverse the trial court and enter judgment for Garmaker and dismiss the complaint against Bergstedt Realty.

KELLEY, J., took no part in the consideration or decision of this case.