**COMMERCIAL ASSOCIATES, INC.,
Respondent (A05–862), Appellant
(A05–871),**

v.

**The WORK CONNECTION,
INC., Appellant (A05–862),
Respondent (A05–871).**

Nos. A05–862, A05–871.

Court of Appeals of Minnesota.

April 18, 2006.

Jeffrey F. Shaw, David H. Grounds, Briggs & Morgan, P.A., Minneapolis, MN, for Commercial Associates, Inc.

M. Gregory Simpson, Siegel, Brill, Greupner, Duffy & Foster, P.A., and Robert J. Gilbertson, A.L. Brown, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for The Work Connection, Inc.

Considered and decided by DIETZEN, Presiding Judge; WRIGHT, Judge; and WORKE, Judge.

## OPINION

DIETZEN, Judge.

In this fee dispute, appellant, an independent insurance agency, challenges the district court's grant of partial judgment notwithstanding the verdict (JNOV), ordering appellant, following a jury finding that it breached its fiduciary duty to respondent-client, to forfeit $483,000 in risk-management fees. Appellant argues that (1) the jury finding of no damages precludes the fee-forfeiture award, and (2) the fee-forfeiture award is not supported by the record. Respondent challenges the district court's judgment, arguing that (1) the fee forfeiture should have included the undisclosed commissions that the insurance company paid to appellant, and (2) the district court erred by refusing to instruct the jury on respondent's breach-of-contract theory. Because in determining the amount of the fee-forfeiture award the district court failed to consider whether the breach involved actual fraud or bad faith and whether it resulted in actual harm, we vacate that portion of the judgment and remand for further proceedings. Because we find no error or abuse of discretion with respect to all other issues, we affirm the remaining portion of the judgment.

## FACTS

Appellant Commercial Associates, Inc.[1] is an independent insurance agency that procures business, property, general-liability, automobile, and workers'-compensation insurance for individuals and businesses. Respondent The Work Connection, Inc. is a staffing company that provides temporary and long-term employees to businesses. Respondent's largest insurance expense is workers' compensation, which costs approximately $1,000,000 annually.

Appellant procured insurance for respondent from 1996 to 2002. The first workers'-compensation policy appellant procured for respondent was issued in 1996. As part of that transaction, appellant had respondent sign a Risk Management Disclosure Statement (RMDS), which stated in pertinent part:

---

**1.** Both Commercial Associates, Inc. and The Work Connection, Inc. filed appeals in this matter. For purposes of this opinion, Commercial Associates, Inc. has been designated appellant and The Work Connection, Inc. as respondent.

In Accordance with Minnesota Statute 60A, Subdivision 6B, this disclosure is being furnished to provide you [with] the following notice. *Only the items whose number or letter is checked apply:*

X 1. The commission paid by the insurance company is not adequate to compensate us for the work required in servicing your account to our normal standards.

Therefore, Commercial Associates is charging *$48,000* as a risk management fee.

—— 2. *This risk management fee is in addition to commissions* which will be included in the premiums which you will be paying to [appellant] on behalf of the Insurance Company providing your Insurance protection.

(Emphasis added).

Between 1996 and 2002, respondent paid appellant a total of $483,000 in annual agency fees for the workers'-compensation insurance policies procured by appellant. During that same period, appellant received $485,070 in commissions from various insurance companies that issued those same policies that appellant procured for respondent. Respondent did not discover that the insurance companies were paying appellant commissions until 2002, when its lawyer received that information in discovery in an unrelated lawsuit.

In December 2000, appellant presented its written proposal to respondent for renewal of its workers'-compensation insurance. The written proposal indicated that the premium for the ACE workers'-compensation policy would accrue a 19% quote "scheduled debit," which increased the estimated premium by $266,214.[2] Respondent contends that when it objected to the

scheduled debit, one of appellant's principals, Jerry Crandall, stated, "You're right. That's supposed to be a scheduled credit," and promised to "take care of it." The final audited amount was $304,647.

In October 2002, Crandall committed suicide. Crandall left a note for the other principal stating that he had "screwed up big time" and had "kept it buried for a few months." The suicide note referenced the ACE credit/debit issue.

Shortly thereafter, appellant commenced a lawsuit against respondent, seeking to recover unpaid insurance premiums in the amount of $184,000. Respondent did not dispute that it owed appellant that amount, but it counterclaimed, alleging breach of fiduciary duty, negligence, negligent misrepresentation and fraud, breach of contract, and breach of statutory duties that resulted in damages in excess of $1,000,000. Essentially, respondent claimed that appellant: (1) breached its fiduciary duty to respondent when it secretly collected commissions from the insurance company, and (2) breached its contract with respondent when it failed to reduce the premium for the ACE policy by the scheduled debit of 19% or $304,647.

Following completion of the testimony at trial, the district court granted appellant's motion for a directed verdict on its claim for unpaid invoices. The district court also refused to instruct the jury on respondent's breach-of-contract claim related to the ACE policy scheduled debit. Appellant argued, and the district court agreed, that because the insurance proposal specifically stated that there was a scheduled debit of 19%, appellant did not breach the insurance contract. But the district court allowed respondent's negligent misrepre-

2. When workers'-compensation insurance policies are issued, the premium is only estimated because the final premium is dependent on actual payroll and other factors that develop during the one-year policy period. After all of the factors that determine the premium are ascertained by audit, a final "earned" premium is calculated.

sentation and fraud claim to go forward on the theories that appellant collected secret commissions, and misrepresented that the scheduled debit should be a 19% credit and that it would "take care of it."

The jury answered a special-verdict form that contained 26 questions. On the issue of whether appellant improperly received undisclosed commissions from the insurance company, the jury found that Crandall (1) did not falsely represent that appellant was not taking commissions on the insurance policies it obtained for respondent, (2) negligently failed to disclose that appellant was taking commissions on the insurance policies in addition to charging a risk-management fee, and (3) had a fiduciary relationship with respondent. The jury also found that respondent sustained no damages as a result of Crandall's failure to disclose the taking of commissions. On the question of whether appellant misrepresented the premiums it would be required to pay for the workers'-compensation policy, the jury found that Crandall (1) falsely represented to respondent that the 2000–01 ACE insurance policy was to contain a scheduled credit and (2) supplied false information to respondent regarding the scheduled debit on the 2000–01 ACE policy. The jury also found that respondent justifiably relied on Crandall's misrepresentations but was not financially harmed.

Both parties filed motions for JNOV or a new trial. Respondent argued that appellant should be required to forfeit not only the risk-management fees but also the commissions the insurance company paid appellant. Respondent also argued that the district court erred by refusing to submit the breach-of-contract claim to the jury. Appellant, in turn, argued that because the jury found that respondent incurred no actual damages, appellant should not be required to forfeit any fees or commissions to respondent.

The district court denied appellant's motion for JNOV or a new trial, and partially granted respondent's motion for JNOV by requiring appellant to forfeit fees to respondent. The district court confirmed the jury's finding that appellant breached its fiduciary duty by failing to disclose that it was receiving commissions from the insurance company. Based on that finding, the district court determined that appellant forfeited its right to the fees paid by respondent, regardless of any actual harm. But the district court declined to extend the fee forfeiture to the commissions the insurance company paid to appellant, and it denied respondent's motion for a new trial based on the failure to submit the breach-of-contract claim to the jury. Both parties appealed.

## ISSUES

I. What is the applicable standard of review on appeal from a partial grant of JNOV ordering fee forfeiture for breach of a fiduciary duty, and is the equitable remedy of fee forfeiture precluded by the jury's finding of no actual harm?

II. Did the district court abuse its discretion by ordering appellant to forfeit all risk-management fees received from respondent, and declining to extend forfeiture to commissions received by appellant from a third-party insurance company?

III. Did the district court err by refusing to submit respondent's breach-of contract theory to the jury?

## ANALYSIS

### I.

As a preliminary matter, the parties raise two threshold issues regarding the applicable standard of review and the effect of the jury's finding of no harm.

## A. Standard of Review

First, the parties dispute the standard of review applicable to the district court's determination that appellant breached its fiduciary duty. Appellant argues that the district court order partially granting respondent's motion for JNOV raises a question of law and, therefore, is subject to de novo review. Respondent argues that because the district court awarded respondent an equitable remedy for appellant's breach of fiduciary duty, the proper standard of review is abuse of discretion.

■■■ We review de novo a district court's decision to grant a motion for JNOV. *Pouliot v. Fitzsimmons,* 582 N.W.2d 221, 224 (Minn.1998). But we review for abuse of discretion the district court's determination of the appropriate equitable remedy for breach of a fiduciary duty. *Bolander v. Bolander,* 703 N.W.2d 529, 548 (Minn.App.2005). Here, the district court, in granting partial JNOV, determined the equitable remedy for appellant's breach of fiduciary duty. *See Raymond Farmers Elevator Co. v. Am. Sur. Co. of New York,* 207 Minn. 117, 119, 290 N.W. 231, 233 (1940) (equitable remedies are to be decided by a judge). Both parties challenge the amount of the fee-forfeiture award. Although the fee-forfeiture award was made in the context of a motion for JNOV, it is the district court's determination of the appropriate equitable remedy that we are asked to review. Consequently, the proper standard of review is abuse of discretion. We review de novo, however, the district court's determination of purely legal issues. *Almor Corp. v. County of Hennepin,* 566 N.W.2d 696, 700 (Minn. 1997).

## B. Finding of No Harm

■■■ Appellant also argues that the jury's finding of no actual damages for breach of fiduciary duty precludes an award of equitable relief and that respondent waived its claim for equitable relief by submitting its damage claim to the jury. We disagree.

■■■ "Equitable claims are not triable by jury as a matter of right." *Noble v. C.E.D.O., Inc.,* 374 N.W.2d 734, 739 (Minn. App.1985), *review denied* (Minn. Nov. 18, 1985). Because "actions for breach of a fiduciary duty generally sound in equity," there is no right to a jury trial on such claims. *R.E.R. v. J.G.,* 552 N.W.2d 27, 30 (Minn.App.1996). Thus, the district court is the trier of fact in determining the equitable remedy for a breach of fiduciary duty, including the amount of fee forfeiture. *See Raymond Farmers,* 207 Minn. at 119, 290 N.W. at 233 (equitable claims are to be decided by a judge). But the district court may empanel an advisory jury to assist it in determination of factual issues. *Pedro v. Pedro,* 463 N.W.2d 285, 288 (Minn.App.1990), *review denied* (Minn. Jan. 24, 1991); *see also* Minn. R. Civ. P. 52.01 (stating that, in action heard by advisory jury, court is required to "find the facts specially"). The jury's findings, however, are "used only to reinforce the court's own decision on the disputed facts—not to supplant it[,]" and the court is still obligated to make its own findings. *In re Estate of Murphy,* 269 Minn. 393, 404, 131 N.W.2d 220, 227 (1964).

■■■ Further, the purpose of the equitable remedy of fee forfeiture is distinct from that of an actual-damages award. Money damages are awarded as compensation for actual loss or injury, while a fee forfeiture is awarded to vindicate a client's "absolute right" to loyalty, regardless of actual damages sustained. *Perl v. St. Paul Fire and Marine Ins. Co.,* 345 N.W.2d 209, 212 (Minn.1984) (*Perl II*). A fee forfeiture is thus analogous to punitive or nominal damages. *Gilchrist v. Perl,*

387 N.W.2d 412, 416 (Minn.1986) (*Perl III*).

## II.

Both parties challenge the amount of the fee forfeiture the district court awarded to respondent for appellant's breach of fiduciary duty. Appellant does not challenge the jury's findings, confirmed by the district court, that appellant is a fiduciary and that it breached its fiduciary duty to respondent when it failed to disclose that it was being compensated by the insurance company as well as charging respondent a fee. Consequently, the issue is whether the district court abused its discretion in determining the appropriate equitable remedy.

 Minnesota law imposes on a fiduciary the highest obligation of good faith, loyalty, fidelity, fair dealing, and full disclosure of material matters affecting the client's interests. *See PJ Acquisition Corp. v. Skoglund,* 453 N.W.2d 1, 17 (Minn.1990) (good faith, loyalty, fidelity, and fair dealing); *Perl II,* 345 N.W.2d at 215 (disclosure). Traditionally, those owing fiduciary duties include general partners with limited partners, attorneys with clients, and trustees with beneficiaries. The fiduciary obligation is premised on trust. *Rice v. Perl,* 320 N.W.2d 407, 410 (Minn.1982) (*Perl I*). The duty of an insurance broker is to represent the client with undivided loyalty and to disclose any material matters bearing upon its representation of the client. *See id.*

In three related cases involving an attorney's breach of his fiduciary duty to a client, our supreme court reviewed the remedy of fee forfeiture for that breach. *Perl III,* 387 N.W.2d at 417; *Perl II,* 345 N.W.2d at 212; *Perl I,* 320 N.W.2d at 411. In *Perl I,* the supreme court confirmed the principle that "an attorney (or any fiduciary) who breaches his duty to his client forfeits his right to compensation[,]" recog-

nizing that "insuring absolute fidelity to the principal's (or beneficiary's) interests is fundamental to establishing the trust necessary to the proper functioning of these relationships." 320 N.W.2d at 411.

In *Perl II,* the supreme court analyzed the nature of the fee-forfeiture remedy, noting that it is similar to nominal damages for breach of an "absolute" right, and, thus, "the client is deemed injured even if no actual loss results." 345 N.W.2d at 212. The supreme court noted, however, that unlike nominal damages, which are awarded to acknowledge the violation of a right, fee forfeiture requires a fiduciary to surrender all compensation paid by a client for services rendered and to return that compensation to the client. *Id.*

In *Perl III,* the supreme court held that the amount of the fee forfeiture is to be determined by the trier of fact in accordance with certain rules. 387 N.W.2d at 417. The court articulated two different rules: total fee forfeiture and scaled fee forfeiture. *Id.* at 416–17. The court concluded that the total-fee-forfeiture rule addressed in *Perl I,* requiring forfeiture of all compensation received by a fiduciary, is appropriate when a fiduciary's breach of duties involves actual fraud, bad faith, and actual harm to the client. The supreme court acknowledged that total fee forfeiture serves a punitive function that "emphasizes the importance of strict fidelity to one's client[.]" *Id.* at 416.

But the supreme court further held that a scaled-fee-forfeiture rule, allowing the amount of fee forfeiture to be scaled to the degree of fiduciary misconduct, is more appropriate when the breach involves no actual fraud or bad faith and when the client sustains no actual harm, particularly when there are multiple potential plaintiffs. *Id.* at 416–17. In so holding, the supreme court noted that a scaled fee forfeiture is more closely aligned with a puni-

tive-damages award, which "should not exceed the level necessary to properly punish and deter." *Id.* at 417 (quotation omitted).

## A. Fee Forfeiture

Respondent argues that *Perl III* requires total fee forfeiture in this case as a matter of law, reasoning that because there are no "multiple potential plaintiffs," the scaled-fee-forfeiture rule does not apply. Appellant argues that because the jury found no actual fraud or actual damage, a scaled fee forfeiture is the appropriate remedy in this case.

The *Perl III* court concluded that "cases of actual fraud or bad faith result in total fee forfeiture." 387 N.W.2d at 417. Thus, if the trier of fact determines that there is actual fraud or bad faith, the result is total fee forfeiture. *Id.* Respondent argues that the following sentence in the court's opinion limits the application of the scaled-fee-forfeiture rule to cases involving multiple potential plaintiffs: "But when no actual fraud or bad faith is involved, when no actual harm to the client is sustained, and particularly when there are multiple potential plaintiffs, we think the better approach is to determine the amount of fee forfeiture by a consideration of the relevant factors set out in Minn. Stat. § 549.20, subd. 3[ ]." *Id.*

We do not read this second sentence as narrowly as respondent. A reasonable interpretation of the sentence, when considered together with the rest of the paragraph, is that the scaled-fee-forfeiture rule applies to circumstances in which the breach of fiduciary duty involves no actual fraud or bad faith and no actual harm. We agree that the sentence in question adds a requirement of no actual harm. And we agree that the supreme court concluded that the presence of multiple potential plaintiffs makes the scaled-fee-forfeiture rule particularly appropriate. But we do not agree that the supreme

court intended to limit the application of the scaled-fee-forfeiture rule to cases involving multiple potential plaintiffs. If the supreme court had intended to do so, it would not have modified the phrase "when there are potential plaintiffs" with the word "particularly." By modifying the phrase, it becomes a parenthetical reason for applying the scaled-fee-forfeiture rule rather than an additional requirement. The thrust of *Perl III* is that the trier of fact has discretion to consider the degree of misconduct in determining the amount of the fee forfeiture. Requiring the presence of multiple potential plaintiffs is inconsistent with providing that discretion. Moreover, such a requirement would limit the application of the scaled-fee-forfeiture rule to class-action lawsuits. We discern no such intention by the *Perl III* court.

Appellant further argues that because the jury found that respondent suffered no actual harm, appellant should not be required to forfeit any fees or commission. We disagree. Because it is undisputed that appellant breached its fiduciary duty to respondent, appellant forfeited its right to compensation. Under *Perl III*, the district court must initially determine whether the total or scaled-fee-forfeiture rule applies by considering whether there was actual fraud or bad faith, and actual harm. 387 N.W.2d at 417. Here, the district court failed to determine whether appellant's breach of fiduciary duty involved actual fraud or bad faith. Consequently, we are unable to determine whether the district court applied the total- or scaled-fee-forfeiture rule in awarding respondent $483,000. Without the requisite findings, we have no basis on which to review the district court's decision for an abuse of discretion. Therefore, we remand for a determination of whether the breach involves actual fraud or bad faith. Should the district court conclude that the scaled-fee-forfeiture rule is applicable, it must

consider the punitive-award factors set forth in *Perl III*. 387 N.W.2d at 416. At its discretion, the district court may reopen the record and receive additional evidence.

## B. Forfeiture of Insurance Commissions

■ Respondent argues that the district court erred by not awarding it, in addition to the risk-management fee, the commissions appellant received from the insurance company. Appellant argues, and the district court agreed, that the remedy in Minnesota for breach of fiduciary duty is limited to forfeiture of compensation paid by the client and does not extend to commissions paid by a third-party.

Respondent admits that no Minnesota case, including the *Perl* trilogy, has ordered the forfeiture of commissions paid by a third party as part of standard industry practice. But respondent contends that appellant artificially inflated the amount of the premiums payable to the insurance company and pocketed the difference, causing respondent, and not a third party, to pay the additional commissions. Here, the district court found that there was no evidence that respondent paid an increased premium or bore the "economic burden" of the insurance commissions received by appellant. The district court also found that the amount of commissions was set by the insurance company as part of its standard industry practice and was independent of the parties' relationship. On factual matters, we defer to the district court and will not set aside findings unless clearly erroneous. Minn. R. Civ. P. 52.01; *see also Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999). We have reviewed the record and see no such error.

Respondent further argues that the failure to order total forfeiture violates Minnesota law and allows the wrongdoer to benefit from its own wrongdoing. Respondent relies specifically on *Handy v. Garmaker*, 324 N.W.2d 168, 171–72 (Minn. 1982), and *Tarnowski v. Resop*, 236 Minn. 33, 51 N.W.2d 801 (1952). But neither of the cases respondent cites conclude, as a matter of law, that fee forfeiture must extend to commissions paid by a third party. In *Handy*, a real-estate agent secretly represented both the buyer and the seller in the purchase of an apartment building, with the purpose of arranging a subsequent sale from the buyer to a company the real-estate agent owned. 324 N.W.2d at 170. But the supreme court in *Handy* did not order forfeiture of third-party commissions; rather, it ordered the return of commissions paid directly from the client-seller to the fiduciary real-estate agent and the client's lost profits on the subsequent sale of the property. *Id.* at 173. And *Tarnowski* involved a surreptitious and undisclosed relationship between a potential buyer's fiduciary and a seller, whereby the seller paid the fiduciary a secret commission, i.e., "a bribe," to falsely represent to the potential buyer that the seller's business was functioning and profitable. 236 Minn. at 35, 51 N.W.2d at 802. In contrast, respondent had knowledge of appellant's relationship with the third-party insurance company but did not know that it was paying commissions to appellant.

Both *Handy* and *Tarnowski*, as well as the other real-estate-commission cases cited by respondent, support the remedy of total fee forfeiture for breach of fiduciary duty. But it is *Perl III*, which is the most recent pronouncement of our supreme court, that analyzes when total and scaled fee forfeiture apply. And it is *Perl III* that is most directly on point.

Here, the district court, as the trier of fact, concluded that the purposes of fee

forfeiture, as determined by the supreme court in the *Perl* trilogy, do not require "vindication by extending fee forfeiture to third party commissions." The district court found that the insurance commissions were paid to appellant as a result of procuring necessary insurance at respondent's request, and there is no evidence that the resulting insurance coverage was inadequate, inconsistent, or otherwise disadvantaged respondent. The district court also found that there was no evidence that appellant could have procured a similar policy from another company without receiving the same standard industry commissions. On this record, we conclude that the district court's findings are not erroneous.

Consequently, we hold that *Perl III* does not require that the fee-forfeiture rule apply to standard insurance commissions paid by a third-party insurance company. The district court's findings that appellant's forfeiture of the third-party commissions was not required to "vindicate" appellant's breach of fiduciary duty are supported by the record. And these findings support the conclusion that fee forfeiture does not extend to third-party insurance commissions in these circumstances. Therefore, the district court did not abuse its discretion in denying respondent's motion for JNOV on this issue.

### III.

Respondent argues that the district court erred by refusing to submit its breach-of-contract theory to the jury, claiming that it provided sufficient evidence that appellant promised to procure an insurance policy with a 19% scheduled credit rather than a 19% scheduled debit. But appellant correctly contends that respondent's argument is inconsistent with the written insurance proposal, which provides that the policy included a 19% scheduled debit.

This court reviews de novo whether the evidence is sufficient to submit a party's theory to a jury. *Spanier v. TCF Bank Sav.*, 495 N.W.2d 18, 20 (Minn. App.1993), *review denied* (Minn. Mar. 22, 1993). Before a litigant is entitled to a jury instruction on the theory of a claim or defense, there must be evidence to support that theory. *Stelter v. Chiquita Processed Foods*, 658 N.W.2d 242, 247 (Minn.App. 2003). It is well-established that a district court's failure to give a requested instruction setting forth a litigant's theory of the case, when there is evidence to support the theory, constitutes error. *Oldendorf v. Eide*, 260 Minn. 458, 464, 110 N.W.2d 310, 314 (1961).

To establish a breach-of-contract claim, a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract. *Indus. Rubber Applicators, Inc. v. Eaton Metal Prods. Co.*, 285 Minn. 511, 513, 171 N.W.2d 728, 731 (1969), *overruled on other grounds by Standslast v. Reid*, 304 Minn. 358, 231 N.W.2d 98 (1975). The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). Whether a contract is formed is judged by the objective conduct of the parties and not their subjective intent. *Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). Minnesota follows the "mirror image rule," which requires that an acceptance be coextensive with the offer and not introduce additional terms or conditions. *Gresser v. Hotzler*, 604 N.W.2d 379, 382 (Minn.App. 2000). Once an offer is positively accepted, however, a requested or suggested modification will not prevent contract formation. *Id.*

The district court declined to submit respondent's breach-of-contract claim because there was no evidence that the insurance policy issued to respondent was different than the written proposal previously submitted. We agree. Here, the only contract in the record is the insurance policy, the parties to which are ACE, the insurance provider, and respondent, the policyholder. This contract was formed when ACE offered its workers'-compensation policy through a written proposal, and respondent accepted the offer by purchasing the proposed policy. Appellant, through Crandall, merely communicated the proposal, and was not a party to the contract. And both the proposal and issued policy contained identical terms, including the 19% scheduled debit, thus satisfying the "mirror image rule." Because appellant was not a party to the insurance contract and respondent received the exact policy for which it bargained, no breach of contract occurred.

Respondent's reliance on appellant's representations that it would correct a "scheduled debit" does not, as a matter of law, modify an insurance policy issued by ACE. *See Dahmes v. Indus. Cred. Co.*, 261 Minn. 26, 110 N.W.2d 484, 490 (1961) (reliance on assertions that explicitly contradict the terms of the written contract is unjustified as a matter of law). Respondent received the policy for which it bargained, and any evidence that appellant misrepresented the terms of the policy was insufficient to establish a contract between appellant and respondent. And respondent was allowed to present its claim to the jury that appellant would correct a "scheduled debit" under the theory of negligent misrepresentation. Therefore, the district court did not err in declining to submit respondent's breach-of-contract claim to the jury.

## DECISION

We conclude that the district court failed to address whether the breach of fiduciary duty involved actual fraud or bad faith in determining the amount of the fee forfeiture it awarded respondent, and therefore, we vacate that portion of the judgment awarding respondent $483,000 and remand for findings consistent with *Perl III*. Because the district court properly exercised its discretion by declining to order forfeiture of commissions paid by a third-party insurance provider and did not err by declining to submit respondent's breach-of-contract theory to the jury, we affirm the remaining portion of the judgment.

**Affirmed in part, reversed in part, and remanded.**