WALTER R. ANDERSON AND ANOTHER v.
JAMES E. ANDERSON AND OTHERS.
WILLIAM B. KORSTAD, APPELLANT.

197 N. W. 2d 720.

May 19, 1972—No. 42161.

210

*Byron W. McCullagh, Wayne A. Pokorny, William B. Korstad,* pro se, and *Korstad, Pokorny, Brophey & Easton,* for appellant.

*Harry H. Peterson,* for respondents.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

This appeal by defendant William B. Korstad arises out of a derivative shareholders' action brought by Walter and Theodore Anderson on behalf of Lakeland Development Corporation (Lakeland) to rescind a sale of land owned by Lakeland to defendant Lecon Properties, Inc., (Lecon) and to recover from defendant Korstad, an officer and director of, and legal counsel for, both corporations, $17,500 in fees paid to him by Lakeland for effecting the sale. Prior to trial, Lakeland, by cross-complaint against defendant Korstad, also sought recovery of the fees paid. This claim was consolidated for trial with plaintiffs' derivative action against both Lecon and Korstad. The court,

upon findings that defendant Korstad "wrongfully and fraudulently" participated in violation of fiduciary obligations owed to plaintiffs and Lakeland, granted rescission, ordering Lecon to reconvey the land to Lakeland, and awarded judgment against defendant Korstad for $17,500 in favor of Lakeland. Defendant Korstad alone appeals from the judgment.[1] We affirm.

Although innumerable issues are suggested, our examination of the voluminous district court file and the four briefs of the parties reveals two essential issues: (1) Whether the critical findings of the trial court concerning defendant Korstad's duplicitous representation of both Lakeland and Lecon without full disclosure to plaintiffs are clearly erroneous; and (2) whether, upon the court's finding as to the time of eventual disclosure, plaintiffs' derivative action to recover the fees paid is barred by the statute of limitations.

The preliminary and substantially undisputed facts may be abbreviated. Eugene Anderson, the incorporator and sole owner of Lakeland, represented by 20 shares of stock, died intestate March 18, 1960. His surviving heirs are four sons: James, then age 26; David, 24; Walter, 19; and Theodore, 17. The two minor sons were then in the custody of decedent's former wife under a 1957 divorce decree. She also was a potential claimant against the estate for unpaid alimony. The sole asset of substantial value

---

[1] Under the judgment defendant Lecon's reconveyance of the land to Lakeland was dependent upon Lakeland's tendering to Lecon payment of the amount Lecon paid for the land within 6 months from the date of the judgment. Lecon appealed but filed only a cost bond. During the pendency of the appeal, the 6-month period expired without Lakeland's tendering payment and this court, by writ of mandamus, ordered the trial court to vacate a judgment amended after expiration of the 6-month period to enlarge the time in which Lakeland could tender payment. See, Anderson v. Anderson, 288 Minn. 514, 175 N. W. 2d 718 (1970). A prior appeal involving a proceeding for involuntary dissolution of Lakeland was also decided by this court and may be referred to for additional facts concerning the controversy presented by this appeal. In re Involuntary Dissolution of Lakeland Development Corp. 277 Minn. 432, 152 N. W. 2d 758 (1967).

in decedent's estate was the 20 shares of stock in Lakeland, of which corporation the decedent, so far as the evidence reveals, was the sole director and managing officer. Lakeland's principal assets consisted of three tracts of land in Anoka County potentially adaptable for commercial development as a shopping center. One tract of approximately 18 acres of an estimated unencumbered value of over $100,000 was owned in fee. In one of the two other tracts comprising a total of approximately 64 acres, Lakeland held a vendee's interest in a contract for deed having a balance of about $42,000 owing at the time of decedent's death. As to the remaining tract, Lakeland held an option to purchase for $160,000. To keep the option open to March 15, 1963, Lakeland was required to pay two annual payments of $500 on March 15, 1961, and March 15, 1962.[2] Five days after decedent's death, a purported meeting of the shareholders and directors of Lakeland was held in the office of James T. Knutson, who had long acted as decedent's attorney. James, David (who was on leave from military service), and Knutson were present and elected themselves president-treasurer, vice president, and secretary, respectively. Shortly thereafter, James contacted defendant Korstad, an attorney experienced in commercial land development. Presumably with attorney Knutson's consent, defendant Korstad then took over as attorney for Lakeland to advise James, who, after his appointment as administrator of decedent's estate on July 27, 1960, undertook to vote all of the shares of Lakeland stock.[3]

The critical findings of the court follow:

"That on July 29, 1960, upon the advice and at the direction of Korstad, a meeting purporting to be a meeting of shareholders of Lakeland was held at Korstad's office, at which meeting James, as representative of the Estate of Eugene, voted the 20

---

[2] The tracts are differentiated as Tracts A, B, and C, respectively, in the court's findings.

[3] David, who was in military service at the time of his father's death, continued in such service until November 30, 1960.

shares of stock in Lakeland and elected himself, Korstad, and one Lloyd M. Severson directors. Immediately thereafter a special meeting of the directors was held electing James president, Severson vice-president, and Korstad secretary-treasurer. The minutes of this meeting and subsequent minutes dated August 11, September 2, and December 8, 1960, indicate Severson was present but there is no evidence or claim that he actively participated in the operation of the company.

"That as of July 29, 1960, Korstad was aware of the equitable interest of David, Walter and Theodore Anderson as heirs of Eugene in Lakeland. That David, Walter and Theodore had no notice of the July 29, 1960, meeting.

"That the July 29 shareholders meeting was held by James and Korstad for the purpose of depriving David, Walter and Theodore of their right to control the management of Lakeland and was in violation of the fiduciary duty James owed his said three brothers as administrator of the estate of Eugene.

"That on August 11, 1960, James E. Anderson and Korstad signed an agreement prepared by Korstad whereby Korstad would be paid seven percent of the gross sales price received from the sale of land owned by Lakeland. That none of the other brothers knew of this agreement.

"That in August of 1960 Korstad also represented one H. Stanley Wessin, who, with others, engaged Korstad to incorporate Lecon Properties, Inc. This company was incorporated to purchase and develop land. Korstad in addition to being attorney of Lecon and paid a retainer by it was also its secretary. Korstad along with James negotiated a sale of Lakeland's interest in Tracts B and C with Lecon for $250,000 which represented a net profit of $48,000 to Lakeland. Walter and Theodore had no notice of this sale. James told David of the sale by phone as David was then in military service stationed in Kansas. David disapproved of the sale. James and Korstad proceeded in spite of David's objections and executed an option contract on behalf of Lakeland on September 2, 1960, which was subsequently exer-

cised by Lecon. Lakeland was paid $48,000 of which Korstad received $17,500.

"That Korstad was not a stockholder of Lecon. That Wessin and his associates had no knowledge of the status of the estate of Eugene Anderson or who the actual owners of Lakeland were and relied upon Korstad as their attorney in connection with their purchase of the land. Lecon took an assignment of the Lakeland contract on Tract B and an assignment of Lakeland's option interest in Tract C. That Lecon has made payments on the contract on Tract B and exercised the option on Tract C and entered into a contract to purchase the same and has made all the required payments thereon. Lecon has also paid all taxes, assessments, et cetera, as required on both Tracts B and C.

"That though the cash position of Lakeland was not good in August of 1960, the corporation owned Tract A free of mortgage, affording Lakeland ample security for loans if needed, to make contract and option payments on Tracts B and C.

"That Lecon paid Lakeland $6,000 at the time the option was executed on September 2, 1960, and on the same day James Anderson wrongfully and without authority and without the knowledge of his three brothers, took $1925.00 thereof for his own personal use. That subsequently as additional money was paid by Lecon, he wrongfully took and used Lakeland funds for his own personal use. That Korstad was aware of the fact that James wrongfully took and used Lakeland funds and advised him to execute notes therefor which James did at a later date.

"That James and Korstad wrongfully and fraudulently consummated the said sale to Lecon for the purpose of making cash paid to Lakeland available to James for his own personal use and to enable Korstad to collect a fee of $17,500 based on the agreement dated August 11, 1960.

"That James as Administrator of the Estate of Eugene wrongfully and fraudulently allowed an inventory and appraisal [to] be filed in the estate in which the 20 shares of Lakeland stock was valued at $5,000 which was only a small fraction of its actual

value in view of the admitted value of Tract A and the sale of Lakeland's interest in Tracts B and C.

"That in December, 1960, James with the knowledge of David and upon the advice of Korstad, wrongfully and fraudulently arranged to purchase the 20 shares of stock of Lakeland from the Estate for $7,000.00. The stock was thereafter transferred by James as administrator, with Probate Court approval, to David, and David pursuant to prior agreement then transferred 10 shares of stock back to James. That the $7,000 actually came from Lakeland funds and was used by James as administrator to pay claims against the estate and expenses of administration, including a payment to him of $250.00 for services.

"That in connection with the transfer of stock, David relied upon the advice and counsel of James and Korstad and further relied on the verbal promise by James that Walter and Theodore would receive their full one-fourth interest when they became of age. That James convinced David that it was essential that their mother, who had legal custody of Walter and Theodore, should have no opportunity to participate in or control the business of Lakeland.

"That Korstad as attorney for Lakeland and as a director and officer of Lakeland, along with James, acted wrongfully and in violation of his duty and obligation to Walter and Theodore and the corporation as hereinbefore stated.

"That Walter had no knowledge of the mismanagement of Lakeland and the fraudulent acts of James and Korstad until November, 1962; that Theodore did not have knowledge thereof until the fall of 1963."

The derivative action against defendants Lakeland, James, and Lecon was commenced by Walter and Theodore in December 1966, at which time plaintiffs claimed ownership of 10 shares of Lakeland stock held by James and David in their names. On August 17, 1967, Theodore, then about 26 years old, was appointed administrator d.b.n. of the Anderson estate, and an amended complaint was served on the three defendants. In July 1968, a

second amended complaint was served on them and also on David and Korstad. On July 16, 1968, James, David, Walter, and Theodore settled their dispute. James assigned his Lakeland stock to Walter and Theodore, a covenant not to sue James was executed, and the action against him was dismissed. This settlement was subsequently ratified by Lakeland at a shareholders' meeting. The consolidated trial was completed on August 30, 1968, and judgment from which defendant Korstad takes this appeal was entered on May 26, 1969.

An inflexible rule of law declares that an agent vested with discretionary authority cannot represent two parties having conflicting interests without the principal's prior consent or subsequent ratification after full disclosure of all the facts. The underlying reason for the rule is the public policy to prevent fraudulent conduct. Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. 2d 273 (1959) ; Olson v. Pettibone, 168 Minn. 414, 210 N. W. 149 (1926) ; Bakke v. Keller, 220 Minn. 383, 397, 19 N. W. 2d 803, 810 (1945). Thus, where an agent representing both the seller and buyer negotiates a sale of land, the principal or employer ignorant of the double agency may at his election not only rescind the contract but also defeat the agent's right to receive or retain any compensation for his services. See, Bakke v. Keller, *supra;* Blackey v. Alexander, 156 Minn. 478, 482, 195 N. W. 455, 456 (1923); Faber v. Enkema, 180 Minn. 493, 231 N. W. 410 (1930). These consequences follow even though the principal ignorant of the duplicitous agency cannot prove actual injury to himself or that the agent committed an intentional fraud. Nothing will defeat the principal's right or remedy except his own prior consent or ratification after full disclosure of all the facts. Olson v. Pettibone, *supra.*[4]

---

[4] The underlying principle of this rule denouncing representation of conflicting interests applies with particular force to an attorney and is embodied in numerous provisions of the Code of Professional Responsibility. See, A. B. A. Code of Professional Responsibility (adopted in this state August 4, 1970, 286 Minn. ix); e. g., CANON 5, EC 5-1, EC 5-3, DR 5-101(A), DR 5-105(A, B, C); CANON 4, EC 4-5, DR 4-101(B)(3).

The crux of the trial court's findings, as we interpret them, is that not only did defendant Korstad serve as a double agent in the sale of Lakeland's property without making full disclosure of all the facts to Walter and Theodore, who he knew would become shareholders of Lakeland, but also that Korstad "wrongfully and fraudulently" participated with James in consummating the sale to Lecon for the purpose of ensuring payment of his fee and of making the proceeds of the sale available to James for his personal use. Further, that Walter did not obtain knowledge of the conduct of James and defendant Korstad until 1962 and Theodore did not obtain such knowledge until 1963. As we read the record, the court based its findings on conflicting inferences that reasonably could be drawn from the testimony of the parties and the witnesses. Where the resolution of disputed fact issues turns principally upon such inferences, as well as upon the trial court's assessment of the relative credibility of the witnesses, the court's findings have adequate evidentiary support and may not be set aside by us as clearly erroneous under Rule 52.01, Rules of Civil Procedure.

We recognize that even though the court's findings are upheld, defendant Korstad's liability for repayment of his fees depends ultimately on his legal obligation to make full disclosure to Walter and Theodore. To be sure, the evidence is undisputed that he made full disclosure to his corporate principals, Lakeland and Lecon, and to James, who at the time of the negotiations and sale had the authority and the duty as administrator of the estate to vote all of the shares of Lakeland. Minn. St. 300.57; see, also, Annotation, 7 A. L. R. 3d 629. Also, through James, defendant Korstad made disclosure to David, who, it appears fair to conclude from the record, ratified the sale and who, as the court found, thereafter in 1962 and 1963 told Walter and Theodore, respectively, of the sale, Korstad's fee, and James' misappropriation of corporate funds. Defendant Korstad argues that since Walter and Theodore were neither the principals nor his clients, his disclosure to Lakeland, Lecon, and James satisfied his fidu-

ciary duty and obligations. This argument ignores the findings as summarized by the trial judge in his explanatory memorandum:

"In view of Korstad's knowledge of the rights of Walter and Theodore and his active participation with James in fraudulently and wrongfully depriving them of their right to participate in the control and management of Lakeland, it is the Court's view that he is not entitled to personally benefit from the sale of Lecon and thus must repay his fee of $17,500."

While we do not intend to imply that there is a legal duty to make full disclosure of double agency to all shareholders or potential shareholders of corporations involved in a transaction of this kind in every case, we hold that defendant had a duty to make full disclosure to Walter and Theodore under the peculiar facts presented here. When he undertook to act for both corporations, he had knowledge of Walter's and Theodore's beneficial interest in Lakeland. He knew, or should be chargeable with knowledge, of the fiduciary obligations that James, as administrator, owed to the heirs of the estate (§ 525.35, and see Arnold v. Smith, 121 Minn. 116, 140 N. W. 748 [1913]) and of his own duty as an agent-officer and attorney of both corporations to make full disclosure of his conflicting interests in the corporations or to otherwise withdraw from efforts to serve the best interests of both clients. His dual representation under such circumstances cannot be condoned and is compounded by the court's findings that he knowingly participated with James in depriving David, Walter, and Theodore of participating in the control and management of Lakeland.

Finally, as we understand, defendant Korstad contends that since Lakeland, as well as James and David, was fully aware of his dual representation shortly after the sale was consummated in 1960, plaintiffs' derivative claim asserted in July 1968 on behalf of Lakeland should be barred on the ground that under § 541.05 the claim accrued to both the corporation and plaintiffs

more than 6 years before suit was commenced. We cannot agree. Plaintiffs' cause of action on behalf of Lakeland against defendant Korstad did not accrue until they became aware, or should have become aware by reasonable diligence, of the facts supporting the claim. § 541.05(6). And the court found that Theodore— who in 1967 was acting as administrator of the estate and who became vested with title to shares of Lakeland on July 16, 1968— had no knowledge of defendant Korstad's duplicity until 1963, and that Walter had no knowledge until 1962. Furthermore, knowledge of misconduct by corporate officers prior to 1962 would not be corporate knowledge imputable to Walter and Theodore, who were to become shareholders by operation of law. See, Lenhart v. Lenhart Wagon Co. 210 Minn. 164, 298 N. W. 37, 135 A. L. R. 833 (1941), modified; Keough v. St. Paul Milk Co. 205 Minn. 96, 285 N. W. 809 (1939); Annotation, 123 A. L. R. 346, 361. Thus, even though Lakeland's corporate action may be barred, plaintiffs' derivative action is not. While it is not clear that David's disclosure to Walter and Theodore in 1962 and 1963 put them on notice at that time of all of the facts supporting their subsequent claim against defendant Korstad (especially in view of their action to inspect the corporate records in 1965), plaintiffs' derivative action was instituted at a time when they held title to the stock of Lakeland and was within the 6-year period of limitation measured from 1962 and 1963.[5]

Affirmed.

MR. JUSTICE TODD and MR. JUSTICE MACLAUGHLIN, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[5] Although not specifically raised, we are satisfied that plaintiffs had standing under Rule 23.06, Rules of Civil Procedure, to bring a derivative shareholders' action because their equity in the shares existed at the time of the sale of the property and subsequently devolved upon them by operation of law.