**Jerold E. MURPHY, Respondent,**

v.

**COUNTRY HOUSE, INC., Appellant.**

**No. C2–83–1326.**

Court of Appeals of Minnesota.

May 15, 1984.

Albert E. Ranum, Stillwater, for appellant.

Ronald O. Ylitalo, North St. Paul, for respondent.

Heard, considered, and decided by FOLEY, P.J., WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

Country House, Inc. appeals from a judgment by the trial court awarding Jerold Murphy $13,375. The court found Murphy was an original investor of 25% of the cash contributed to incorporate Country House, and was therefore entitled to 25% of the excess profits declared and distributed by Country House during the fiscal years of 1976 through 1980 inclusive. We reverse and remand for entry of judgment for Murphy in the amount of $5,944, representing a 1/9 interest.

### FACTS

In 1963, Murphy, together with Kenneth H. Johnson, Donald F. Wolf, and Myron W. Scullen, incorporated Country House, Inc. in Minnesota and authorized 1000 shares at a par value of $100 per share, and designated Murphy, Kenneth Johnson, Wolf and Scullen as incorporators and directors. Country House is a wholesale milk and dairy products dealer.

The minutes of the initial Board of Directors meeting, July 20, 1963, reflect that each of the four original incorporators and directors paid $5,000 into the corporation

and received 50 shares of stock. At a special meeting three days later, the Board issued an additional 250 shares of stock to Kenneth Johnson in exchange for certain franchises, trade names, and customer accounts.

Between 1963 and 1972, all four original incorporators worked as full time employees of the corporation and received wages. During that time, Country House also paid additional "compensation" or "bonuses" to the original four—twice in 1964, once in 1965, and once in 1969. The minutes show that the Board authorized payment of bonuses when fiscal reports indicated sufficient corporate earnings for the year. Only the minutes of a 1969 Board meeting classify these additional payments as "bonuses" for exceptionally good work done.

In 1972, Murphy terminated his employment with the corporation. At that time, he offered to sell his stock for one-fourth of the actual value of the corporate assets. The Board, however, offered to purchase his stock at a value of one-ninth of the corporation's book value. Murphy retained his shares and the parties stipulated at the time of trial he held a one-ninth interest in the corporation.

At trial, Gregory Johnson testified on cross-examination that from 1975 through 1980, the corporation paid the following bonuses:

September, 1975, Kenneth Johnson, Mike Scullen and Don Wolf each received $4,000 in bonuses. September, 1976, Kenneth Johnson, Myron Scullen, Don Wolf each received $7,000 in bonus. September, '77, the same three each received $8,000. September, '78, each, the same three, received $1500. September, 1979, they all received zero. September, 1980, Kenneth Johnson, Gregory Johnson, for the first time, Myron Scullen, Don Wolf each received $1,000 bonus, which as stated here, included in their 1980 wages.

Gregory Johnson also testified that beginning in 1980, the corporation included bonuses as wages for tax purposes on its records. The Board has never declared any dividends.

The trial court found:

That, between the fiscal years 1963 and 1971, inclusive, the excess profits of the Corporation were distributed annually in equal one-quarter bonuses referred to as 'bonuses' to the four original incorporators; however, between the fiscal years 1972 and 1974, inclusive, the Corporation had no excess profits to so distribute.

That between the fiscal years 1975 and 1978, inclusive, the excess profits of the Corporation were distributed annually in equal one-third shares to the aforesaid three incorporators, excluding Plaintiff; however, in fiscal 1979 the Corporation had no excess profits to distribute and in fiscal 1980 Defendant Corporation distributed its excess profits in equal one-quarter shares to the aforesaid three incorporators, excluding plaintiff, and to Gregory W. Johnson.

That the distributions, through fiscal 1975, were distributed exclusively to the original incorporators in direct proportion to their initial cash investment in the company.

That the amount of excess profits distributed during each of the fiscal years at issue were as follows:

| 1976 | – | $ 21,000 |
| 1977 | – | 24,000 |
| 1978 | – | 4,500 |
| 1979 | – | –0– |
| 1980 | – | 4,000 |

The trial judge also held, as a conclusion of law, "[t]hat the annual distribution of excess profits from Defendant Corporation during the years at issue was in the nature of a return on the initial capital investment of the original incorporators to be shared on an equal basis." The judge then decreed that Murphy was entitled to one-quarter share of the excess profits declared and distributed during the fiscal years of 1976, 1977, 1978, 1979, and 1980, and that his share equalled $13,375.

Country House argues that (1) the evidence fails to justify the findings of fact,

conclusions of law, and judgment, and (2) the distribution of "bonuses" did not constitute dividends or a distribution of excess profits in the nature of an equally-shared return on the initial capital investment of the four original incorporators.

## ISSUES

1. Did the trial court correctly conclude that the bonuses constituted a distribution of excess profits in the nature of a return on the initial capital investment of the four original incorporators to be shared on an equal basis?

2. Does the record support the trial court's findings of fact?

## ANALYSIS

### 1. "Bonuses" as Dividends

 A. This case centers on properly classifying the corporate "bonuses" paid between 1975 through 1980. The general rule of law permits corporations to pay bonuses to employees who performed services beyond those required in their respective employment contracts. *See Hartung v. Billmeier*, 243 Minn. 148, 66 N.W.2d 784 (1954). The facts of this case, however, indicate that the so-called bonuses merely constituted a dividing of surplus profits. No evidence appears which suggests that the Board reviewed the quality of work performed or the number of hours worked before approving these "bonuses" although testimony exists which expresses shareholders' beliefs that they had worked hard. However, the corporation instead distributed "bonuses" only when fiscal reports showed sufficient income in the prior years.

Under these facts, the trial judge held, as a conclusion of law, that an incorporator is entitled to a return on initial capital investment distributed ratably according to each incorporator's original cash contribution. The trial court's judgment entitling plaintiff to a one-quarter share was based on an erroneous legal concept.

Courts generally classify a recurrent payment to the stockholders of a corporation on their stock (investment) as a dividend. *Hellmich v. Hellman*, 276 U.S. 233, 237, 48 S.Ct. 244, 245, 72 L.Ed. 544, 546 (1928).

Our Supreme Court, in determining whether a specific set of facts includes a dividend, stated:

> In determining whether a transaction constitutes a "dividend," consideration must be given to the context in which the term "dividend" is used; the consequences that turn upon the answer to the question; and the facts of the particular case . . . . Ordinarily the object of a dividend is to enable the shareholders to enjoy the fruits of the corporate operation.

*Stephenson v. Plastics Corp. of America*, 276 Minn. 400, 410, 150 N.W.2d 668, 676 (1967). The *Stephenson* case centered on whether a "spin-off" transaction creating a new corporation and distributing the new company's stock to the "old" company stockholders was a dividend within the meaning of the warrants language. *Stephenson*, 276 Minn. at 410, 150 N.W.2d at 676.

Using a similar analysis, a Florida appellate court noted that:

> [A] distribution may be treated as a dividend although the corporation has taken no formal action to designate it as such. The devices available to disguise dividends are as numerous as the ways in which a corporation can disburse its funds. It has been universally recognized that the mere fact that the distributions are not called "dividends" by the board of directors of the corporation does not detract from such distributions being dividends within the meaning of the law. This is so regardless of the fact that the distributions are made in proportions other than the stockholders' respective holdings.

*Alliegro v. Pan American Bank*, 136 So.2d 656, 660–61 (Fla.App.1962), *cert. denied*, 149 So.2d 45 (Fla.1963). The facts of that case involved a consolidated tax procedure between a bank and its parent majority shareholder. For tax purposes, the parent's losses offset the bank's earnings.

The bank later transferred to the parent the tax savings (the amount the bank would have paid had it not filed a consolidated return). *Alliegro*, 136 So.2d at 657. The Florida appellate court found that the payments from the bank to the parent were dividends not paid pro rata to all shareholders. These circumstances violated minority shareholders' rights and consequently the injured shareholders "may bring a derivative action to have dividends wrongfully paid restored to the corporation". *Allieg-ro*, 136 So.2d at 659.

In a similar case, a Michigan appellate court looked at the entire course of conduct between four shareholders. *Erdman v. Yolles*, 62 Mich.App. 594, 597, 233 N.W.2d 667, 669 (1975). The corporation specifically declared no dividends or other distributions to shareholders except through salaries. The plaintiff, as a 25 percent stockholder, terminated his employment with the corporation. Subsequently, the three remaining employed shareholders sold some of the corporation's assets and raised their salaries. *Erdman*, 62 Mich.App. at 596, 233 N.W.2d at 668. The *Erdman* court found that the corporation distributed its profits through salary increases which the sale of corporate assets financed, and consequently, the distribution entitled plaintiff to his one-fourth share. *Erdman*, 62 Mich. App. at 597, 233 N.W.2d at 669.

The reasoning of the above cases applies here. The trial court reviewed the parties' conduct and made an erroneous finding that the "bonuses" constituted returns on the incorporators' initial investment. However, in terms of *Hellmich*, the payments constituted dividends. Although the Board neither classified the payments as dividends nor distributed the monies ratably according to each shareholder's interest, it effectively paid dividends to some of its shareholders during its years of surplus profits.

█ B. The next step involves computing the amount to which Murphy is entitled. A corporation must distribute dividends ratably according to each stockholder's interest. *Sherman v. Pepin Pickling Co.*, 230 Minn. 87, 92–93, 41 N.W.2d 571, 575 (1950). Here, Murphy concedes that he holds only a one-ninth interest in the corporation (determined in a prior adjudication involving the parties). Accordingly, he is entitled to one-ninth, not one-fourth as the trial court concluded, of the monies distributed.

In its findings of fact, the trial court correctly found that the corporation distributed $53,500 of its excess profits between 1976 and 1980, inclusive. Plaintiff's share, one-ninth of $53,500, equals $5,944.

2. Findings of fact

█ The corporation challenges four of the trial court's findings of fact. Where a court sitting without a jury makes findings of fact, an appellate court will not set aside those findings unless clearly erroneous. Minn.R.Civ.P. 52.01; *In Re Estate of Boysen*, 309 N.W.2d 45, 47 (Minn.1981). The record fails to support two of these challenged findings. First, between 1963 and 1971, inclusive, the corporation paid bonuses only for the years 1964, 1965, and 1969, not annually as the trial court found. Second, the corporation, through fiscal 1975, did not distribute payments exclusively to the original four incorporators. Rather, in 1975, it paid bonuses only to Kenneth Johnson, Scullen, and Wolf. While the record indicates that these findings are clearly erroneous, in view of our decision, they constitute harmless error.

**DECISION**

Reversed and remanded for entry of judgment for plaintiff of $5,944.