**D. Randall BLOHM, Appellant,**

v.

**Bruce D. KELLY, et al., Respondents.**

**No. A08–1157.**

Court of Appeals of Minnesota.

May 12, 2009.

John D. Hagen, Jr., Minneapolis, for appellant.

Timothy P. McCarthy, Chestnut & Cambronne, P.A., White Bear Lake, for respondents.

Considered and decided by ROSS, Presiding Judge; HALBROOKS, Judge; and JOHNSON, Judge.

## O P I N I O N

JOHNSON, Judge.

BNK, Inc., is a closely held corporation that previously owned a small business. Bruce D. Kelly, the sole officer and director, owns 80 percent of the shares; D. Randall Blohm owns 20 percent of the shares. After BNK sold all of its corporate assets for approximately $112,200, Kelly caused BNK to distribute $2,400 of the proceeds to Blohm. Blohm sued Kelly and BNK, alleging that Kelly misappropriated some of the proceeds of the sale. BNK established a special litigation committee (SLC) to investigate Blohm's claims against Kelly. The SLC recommended that BNK not pursue those claims. The district court granted summary judgment to BNK and Kelly on all of Blohm's claims. We conclude that Kelly is entitled to summary judgment on Blohm's claim concerning events occurring before the sale of corporate assets but not on Blohm's claim concerning events occurring after the sale. We also conclude that Kelly and BNK are not entitled to summary judgment on Blohm's claim that he was denied access to corporate records. Therefore, we affirm in part, reverse in part, and remand.

## FACTS

From 1991 to 2005, BNK owned and operated an automobile service station located in the city of St. Paul. In November 2004, Blohm learned that Kelly was considering a sale of the service station. Blohm requested financial records of the corporation from Kelly. Blohm had difficulty obtaining some records and was completely unsuccessful in obtaining other records.

In January 2005, Kelly sold all of BNK's assets to the long-time manager of the service station. Kelly states that the sale price was approximately $112,200. Blohm did not object to the terms of the sale. In May 2005, Kelly sent Blohm a check, paid from BNK, for $2,400, which represented Blohm's share of the proceeds of the sale of the corporation's assets, after the settling of accounts with creditors.

In January 2006, Blohm commenced this action against Kelly and BNK. Blohm's allegations can be grouped into three claims. First, Blohm alleges that, before the sale of BNK's assets, Kelly paid himself excessive compensation and commingled BNK's funds with his personal assets and with the assets of another company partially owned by Kelly. Blohm argues that Kelly breached fiduciary duties imposed by the common law, *see Pedro v. Pedro*, 489 N.W.2d 798, 801 (Minn.App. 1992), *review denied* (Minn. Oct. 20, 1992), and the Minnesota Business Corporation Act, *see* Minn.Stat. §§ 302A.251, subd. 1, .361 (2008).

Second, Blohm alleges that, after the sale of BNK's assets, Kelly used the proceeds of the sale to pay personal debts and distributed an excessive amount of the remaining proceeds to himself. Specifically, Blohm alleges that Kelly made approximately $58,300 in "questionable distributions" using BNK checks. Blohm relies on the same legal theories that apply to his

first claim. Third, Blohm alleges that Kelly and BNK denied him access to corporate records. *See* Minn.Stat. § 302A.461 (2008).

The parties engaged in discovery and other pre-trial activities for approximately a year and a half. In October 2007, the district court stayed further proceedings, at Kelly and BNK's request, to allow an SLC to investigate Blohm's claims against Kelly. In January 2008, the SLC, which consisted of a single attorney in private practice, completed its investigation and issued a report that concluded as follows:

> Because there appear to be no potentially viable claims against Kelly based on the allegations of Blohm, the costs of pursuing any such claims would be significant in comparison to the potential of no recovery. Thus, the Committee recommends that the Company refrain from instituting any legal action against Kelly.

In February 2008, BNK and Kelly moved for summary judgment. Kelly argued that Blohm's claims for relief against him are derivative in nature and that the district court should reject them based on the SLC's investigation and report. The district court granted the motion, reasoning that the claims are derivative and that the SLC's determination is entitled to deference. The district court also reasoned that BNK and Kelly are entitled to summary judgment on Blohm's claim concerning access to corporate records because Blohm could not prove damages. Blohm appeals.

### ISSUES

I. Is Kelly entitled to summary judgment on Blohm's claim of breach of fiduciary duties as it relates to events that allegedly occurred *before* the corporation's sale of assets?

II. Is Kelly entitled to summary judgment on Blohm's claim of breach of fiduciary duties as it relates to events that allegedly occurred *after* the corporation's sale of assets?

III. Are BNK and Kelly entitled to summary judgment on Blohm's claim that they denied him access to BNK's corporate records?

### ANALYSIS

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03; *see also MacRae v. Group Health Plan, Inc.,* 753 N.W.2d 711, 716 (Minn.2008). A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the party against whom summary judgment was granted. *Frieler v. Carlson Mktg. Group, Inc.,* 751 N.W.2d 558, 564 (Minn.2008). On review of a grant of summary judgment, we determine "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *City of Morris v. Sax Invs., Inc.,* 749 N.W.2d 1, 5 (Minn.2008) (quotation omitted).

### I.

Blohm first argues that the district court erred by granting summary judgment to Kelly on the first claim, which concerns events allegedly occurring before the sale of BNK's assets, based solely on the SLC's determination that BNK not pursue the claims against Kelly.

## A. Direct or Derivative

 The threshold inquiry with respect to Blohm's first claim is whether it should be characterized as a direct claim (*i.e.*, a claim belonging to the shareholder) or a derivative claim (*i.e.*, a claim belonging to the corporation). As a general rule, "an individual shareholder may not assert a cause of action that belongs to the corporation." *Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 617 (Minn.1995). A shareholder, however, may pursue a cause of action if the corporation has failed to take action on its own behalf. *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn.2003). "A shareholder derivative suit is a creation of equity in which a shareholder may, in effect, step into the corporation's shoes and seek in its right the restitution he could not demand in his own." *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 550 (Minn.2008) (quotation omitted). When a shareholder has alleged a derivative claim, the board of directors may, by resolution, form a "special litigation committee consisting of one or more . . . independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued." Minn.Stat. § 302A.241, subd. 1 (2008); *see also In re UnitedHealth Group*, 754 N.W.2d at 550. Under the business judgment rule, a court should defer to an SLC's conclusions if the SLC was independent and if it conducted its investigation in good faith. *In re UnitedHealth Group*, 754 N.W.2d at 559. The independence of SLCs from boards of directors thus permits dismissal or settlement of derivative actions "despite a conflict of interest on the part of some or all directors." *Id.* at 550–51.

 In determining whether a claim is direct or derivative, the central inquiry is "whether the complained-of injury was an injury to the shareholder directly, or to the corporation." *Wessin v. Archives Corp.*, 592 N.W.2d 460, 464 (Minn.1999). "Where the injury is to the corporation, and only indirectly harms the shareholder, the claim must be pursued as a derivative claim." *Id.* at 464; *see also Seitz v. Michel*, 148 Minn. 80, 87, 181 N.W. 102, 105 (1921). A district court's decision as to whether a claim is direct or derivative is subject to a *de novo* standard of appellate review. *See Wessin*, 592 N.W.2d at 463–64.

 Blohm has alleged that Kelly abused his position in the corporation by paying himself excessive compensation and by using corporate assets to discharge personal debts and debts of another business. If true, the alleged conduct reduced the assets of the corporation in the first instance. Corporate assets "do not belong to the stockholders, but to the corporation." *Seitz*, 148 Minn. at 87, 181 N.W. at 105. The alleged conduct, if it occurred, also reduced the capital distributions to Blohm, but only indirectly. Blohm's alleged injury is not separate, distinct, and independent from the corporation's injury. *See Wessin*, 592 N.W.2d at 464. Thus, the alleged injury is primarily an injury to the corporation. *See id.*; *Stocke v. Berryman*, 632 N.W.2d 242, 247 (Minn.App.2001), *review denied* (Minn. Sept. 25, 2001); *Skoglund v. Brady*, 541 N.W.2d 17, 21–22 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996). In this situation, a minority shareholder may bring suit against the majority shareholder only " 'in a representative capacity for the benefit of the corporation, and not for damages to him individually.' " *Wessin*, 592 N.W.2d at 464 (quoting *Seitz*, 148 Minn. at 87, 181 N.W. at 105).

 Blohm argues that his claim, to the extent it addresses pre-sale events, is

direct rather than derivative because Kelly owed fiduciary duties directly to Blohm as well as to the corporation. Blohm cites Minn.Stat. § 302A.751 (2008) and that part of our opinion in *Pedro v. Pedro,* 463 N.W.2d 285 (Minn.App.1990), *review denied* (Minn. Jan. 24, 1991), in which we said, "Each shareholder owes the others a fiduciary duty." *Id.* at 288. But the nature of Kelly's duties is not the focus of the analysis. "In analyzing whether a claim is direct or derivative, we look not to the theory in which the claim is couched, but instead to the injury itself." *Wessin,* 592 N.W.2d at 464; *see also Northwest Racquet Swim & Health Clubs, Inc.,* 535 N.W.2d at 618 n. 6. Blohm's argument has been rejected by the supreme court: "While Minn.Stat. § 302A.751, subd. 1[ ] does expand the options of shareholders to bring actions seeking personal damages, as distinguished from derivative damages, the equitable remedy expanded does not replace the traditional derivative action." *PJ Acquisition Corp. v. Skoglund,* 453 N.W.2d 1, 6 (Minn.1990). Thus, section 302A.751 does not give Blohm a direct cause of action against Kelly in these circumstances.

Blohm also argues that it is illogical to distinguish between direct and derivative causes of action when there are only two shareholders, one of whom is the alleged wrongdoer. Blohm seeks to invoke caselaw that permits a direct action by a minority shareholder who has been "singled out" for oppressive treatment by a controlling shareholder. *Wessin,* 592 N.W.2d at 465 (citing *Segerstrom v. Holland Piano Mfg. Co.,* 160 Minn. 95, 100, 199 N.W. 897, 899 (1924); *Murphy v. Country House, Inc.,* 349 N.W.2d 289, 292 (Minn.App. 1984)). But that caselaw is confined to those situations in which one minority shareholder has been treated differently from other minority shareholders. *Segerstrom,* 160 Minn. at 100, 199 N.W. at 899;

*Murphy,* 349 N.W.2d at 292–93. In this case, Blohm has alleged that Kelly engaged in conduct that was prejudicial to all shareholders of the corporation in the same manner. Thus, the caselaw on which Blohm relies does not apply. Blohm also cites a foreign case permitting a direct cause of action by one of two shareholders against the other, *see W & W Equip. Co. v. Mink,* 568 N.E.2d 564, 571 (Ind.Ct.App. 1991), but that case is not in harmony with Minnesota law.

Blohm last argues that his first claim is a direct claim because Kelly breached a shareholder agreement providing that "each party shall have the absolute right to examine and copy, in person or by legal representative, all other corporate records, including all business records." But Blohm did not plead a claim of breach of contract. Thus, he has forfeited any claim based on the agreement. *See Onvoy, Inc. v. SHAL, LLC,* 669 N.W.2d 344, 353 n. 8 (Minn.2003) (citing *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988)).

█ Therefore, the district court properly characterized Blohm's first claim as a derivative claim belonging to the corporation.

## B. Stay of Proceedings

█ Blohm also argues that the district court erred by staying the action, one week before the scheduled trial date, to allow the SLC to investigate the claims against Kelly. A district court's decision to stay a pending action is reviewed for an abuse of discretion. *Niazi v. St. Paul Mercury Ins. Co.,* 265 Minn. 222, 232, 121 N.W.2d 349, 356 (1963); *Bjorklund v. Bjorklund Trucking, Inc.,* 753 N.W.2d 312, 317 (Minn.App.2008), *review denied* (Minn. Sept. 23, 2008).

Blohm argues that the stay was improper in light of *Janssen.* In that case, the

district court stayed the action after the SLC had performed an investigation because the corporation's board of directors had not properly delegated authority to the SLC and the corporation wished to remedy the deficiencies in the delegation. *Janssen*, 662 N.W.2d at 880–81. The supreme court held that the stay was improper because an SLC is not entitled to a second opportunity to conduct its investigation if the first investigation was deficient. *Id.* at 889–90.

In this case, the district court stayed the action upon Kelly and BNK's request at a time when the SLC had not yet conducted an investigation. Without the stay, the SLC would not have been able to conduct any investigation, and BNK's board would not have been able to utilize the SLC to consider whether to pursue claims against Kelly, as contemplated by Minn.Stat. § 302A.241, subd. 1. *Janssen* is inapplicable to this case because the district court did not give the SLC a second opportunity to investigate the claims. It may be debatable whether BNK should have delegated authority to the SLC at an earlier stage, but that is a matter for the district court's discretion. Blohm has not cited any authority for the conclusion that the district court abused its discretion by staying proceedings to allow for an investigation and report by the SLC.

## C. Deference to SLC

■ Blohm next argues that the district court erred by deferring to the SLC's conclusion that BNK should not pursue a claim against Kelly. Under the business judgment rule, a court should defer to the determinations of an SLC if "(1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." *In re UnitedHealth Group*,

754 N.W.2d at 559. The corporation bears the burden of establishing both of these requirements. *Id.* at 561.

■ Blohm does not attack the district court's analysis of the first requirement, that the SLC must be independent. Rather, Blohm focuses on the second requirement, arguing that the SLC made a purely legal judgment rather than a "business judgment." Blohm contends that the SLC's analysis in this case is very similar to the analysis of the SLC in *Janssen*, of which the supreme court disapproved, stating that the SLC's report "hints that [the] decision was that of a special counsel evaluating the likelihood of a legal victory" rather than a business judgment accounting for and weighing the myriad factors that are "common to reasoned business decisions." *Janssen*, 662 N.W.2d at 889. Blohm's argument strays from the caselaw providing that the second requirement is limited to the question whether "the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." *In re UnitedHealth Group*, 754 N.W.2d at 559. It is true that an SLC should consider multiple factors when exercising its business judgment, such as the "legal, ethical, commercial, promotional, public relations, fiscal and other factors familiar to the resolution of many if not most corporate problems." *Id.* at 555 (quotation omitted). But that is not to say that a court should conduct a substantive review of the SLC's consideration of those factors.

■ In fact, a court should not do so. The supreme court recently adopted the so-called *Auerbach* rule for determining whether it is appropriate to defer to an SLC. *Id.* at 559 (relying on *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979)). The supreme court explained that the *Auerbach* court "forbade any inquiry into 'which factors

were considered by [the SLC] or the relative weight accorded them in reaching that substantive decision.'" *Id.* at 555 (alteration in original) (quoting *Auerbach*, 393 N.E.2d at 1002). The supreme court elaborated by stating that, under the *Auerbach* rule, "'the substantive aspects of a decision to terminate a shareholders' derivative action against defendant corporate directors made by a committee of disinterested directors appointed by the corporation's board of directors are beyond judicial inquiry.'" *Id.* (quoting *Auerbach*, 393 N.E.2d at 996). Rather, a court may consider only "'the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee.'" *Id.* (quoting *Auerbach*, 393 N.E.2d at 996). In essence, Minnesota's version of the business judgment rule makes a distinction between "the procedures utilized by an SLC," which are "well within the expertise of the judiciary," *id.* at 559, and the substance of an SLC's business judgment, which courts "'are ill equipped and infrequently called on to evaluate,'" *id.* at 556 (quoting *Auerbach*, 393 N.E.2d at 1000). We are mindful of the *Auerbach* court's warning that a court "may not under the guise of consideration of [procedural] factors trespass in the domain of business judgment." 393 N.E.2d at 1002.

■ In this case, the district court record reveals that BNK retained an experienced and reputable attorney, who conducted an investigation between October 22, 2007, and January 4, 2008. In November 2007, the SLC interviewed Blohm, who had counsel present. Later that month, the SLC interviewed Kelly, who also had counsel present. The SLC's report states that it reviewed "voluminous documentation" produced by the parties in the course of litigation, including all pleadings and the transcripts of the depositions of Kelly, Blohm, and two accountants. The SLC's

report states that it had been permitted access to the necessary persons and had been provided with "thorough and accurate documents as requested." The SLC's report consists of 19 pages of text, which describes its investigation and conclusion in a clear and professional manner. Our review of the SLC report causes us to conclude that its procedures were "adequate, appropriate, and pursued in good faith." *In re UnitedHealth Group*, 754 N.W.2d at 559.

Blohm argues further that the SLC's conclusion is not deserving of deference because the SLC considered fewer of the relevant factors than were considered by the SLC in *Janssen*. Consistent with the caselaw discussed above, it is appropriate for us to inquire only whether the SLC made itself aware of the various factors that should inform its business judgment and incorporated them into its decision-making. We are satisfied that the SLC did so. In fact, the SLC's report recites the factors that were identified by the supreme court. *See id.* at 555.

In sum, Blohm's claims concerning events occurring before the sale of BNK's assets are derivative in nature and were properly dismissed by the district court based on the SLC's investigation and report.

## II.

■ Blohm also argues that the district court erred by granting summary judgment to Kelly on the second claim, which concerns events that allegedly occurred after the sale of BNK's assets. The parties' arguments concerning this claim are substantially similar to the arguments concerning Blohm's first claim, but our analysis is different because of the procedural history of this case.

■ The SLC declined to investigate and analyze Blohm's second claim. The

SLC's report states, "The Committee makes no finding with respect to any complained of disbursements made after the sale of BNK to [the buyer], as alleged damages arising from these disbursements would give rise to a direct not derivative claim by Blohm, individually, as against Kelly." Blohm contends that the district court erred by granting summary judgment on his post-sale claim in light of the SLC's determination that it is a direct claim. Although courts defer to the business judgment of an independent SLC that conducts a good-faith investigation into a claim, *In re UnitedHealth Group,* 754 N.W.2d at 559, no deference is due to the extent that the SLC does not investigate and analyze a claim. Thus, the district court erred by dismissing Blohm's second claim on the basis of the SLC's investigation and report. We need not consider whether the SLC properly characterized this claim as direct.

 The caselaw does not permit a remand to allow the SLC to expand the scope of its investigation and analysis. In *Janssen,* the corporation "implicitly acknowledg[ed] the failures in its first resolution and investigation" and requested that the district court consider a second resolution and investigation. 662 N.W.2d at 889. The supreme court rejected that argument, stating, "If the courts allow corporate boards to continually improve their investigation to bolster their business decision, the rights of shareholders and members will be effectively nullified." *Id.* at 890. Consequently, "if the initial SLC investigation and recommendation fail to satisfy [the business-judgment] standard, 'the derivative suit proceeds on its merits' with no opportunity to rectify any deficiencies." *In re UnitedHealth Group,* 754 N.W.2d at 559 (quoting *Janssen,* 662 N.W.2d at 889).

Thus, Kelly is not entitled to summary judgment on Blohm's second claim on the grounds stated by the district court.

### III.

 Blohm next argues that the district court erred by granting summary judgment to Kelly and BNK on his claim that he was denied access to corporate records in violation of Minn.Stat. § 302A.461, subds. 2, 4. The district court considered the claim to be a direct claim belonging to Blohm but reasoned that Kelly and BNK are entitled to summary judgment because Blohm did not offer evidence of damages.

 Minnesota corporations are required to maintain regular records of certain corporate documents and "appropriate and complete financial records." Minn. Stat. § 302A.461, subds. 2, 3. Shareholders have "an absolute right, upon written demand, to examine and copy" those corporate records, "in person or by a legal representative, at any reasonable time." *Id.,* subd. 4(a). Because the right of access to corporate records is personal to each shareholder, Blohm has alleged an injury to himself and, thus, a direct claim. *See Wessin v. Archives Corp.,* 581 N.W.2d 380, 390 (Minn.App.1998), *rev'd on other grounds,* 592 N.W.2d 460 (Minn. May 13, 1999); *see also Wessin,* 592 N.W.2d at 464; *Seitz,* 148 Minn. at 87, 181 N.W. at 105; *Skoglund,* 541 N.W.2d at 22.

We first consider whether Blohm has shown a genuine issue of material fact as to whether he has been denied access to BNK's records. Blohm stated in his deposition that he had not received several types of requested documents. Kelly admitted in the first day of his deposition that he had not yet provided Blohm with some types of documents. The deposition was suspended to allow Kelly to gather those documents and provide them to

Blohm. When Kelly's deposition resumed, he was asked whether he had made an effort to find additional records, to which he answered, "Apparently not," and "I don't remember." Based on this evidentiary record, a trier of fact could conclude that Kelly has not given Blohm the access to records that he requested. It remains to be determined whether the records Blohm seeks are records to which he is entitled by statute.

We next consider whether Blohm has sufficient evidence of damages. A shareholder is not always required to prove damages arising from a denial of access to corporate records because the shareholder may seek other forms of relief. A shareholder's right to inspect corporate records "may be enforced in a proceeding under section 302A.467." Minn. Stat. Ann. § 302A.461, 1981 reporter's notes (West 2004); *see also Whetstone v. Hossfeld Mfg. Co.*, 457 N.W.2d 380, 383 (Minn.1990) (relying on reporter's notes concerning Minn.Stat. Ann. § 302A.471). In that event, a district court may award "any equitable relief it deems just and reasonable in the circumstances." Minn. Stat. § 302A.467 (2008). Blohm contends that he should be permitted to pursue an equitable remedy, such as an accounting. He is correct that such an equitable remedy is not foreclosed by the law or by the evidence.

In addition, Blohm argues that he should be permitted to prove that Kelly's and BNK's refusal to give him access to records caused him financial injuries that would not have occurred if the records had been made available upon his first request. More specifically, he asserts that he would have been better able to identify the disposition of the proceeds of the asset sale. The evidentiary record shows that Blohm first requested corporate records from Kelly more than three years before the case was submitted to the district court on a motion for summary judgment, at which time it was unclear what had happened to the money BNK received from the buyer of the corporate assets. As a practical matter, it may be difficult for Blohm to identify a form of damages that is both capable of being proved and separate and distinct from the damages he seeks to prove on his claim of breach of fiduciary duty, but it is inappropriate at this stage to consider any reduction for duplicate recoveries.

Blohm also argues that his claim should survive summary judgment because he wishes to obtain reimbursement of the costs and attorney fees he incurred in seeking access to corporate records. But that argument constitutes bootstrapping; attorney fees may be available to Blohm if he establishes a right to relief on his records claim, but the prospect of a recovery of fees does not independently permit him to go forward with the claim.

Accordingly, Kelly and BNK are not entitled to summary judgment on Blohm's claim alleging a denial of his right of access to corporate records.

## DECISION

The district court properly granted summary judgment to Kelly on Blohm's claim concerning events occurring before the sale of corporate assets. The district court erred, however, by granting summary judgment to Kelly on Blohm's claim concerning events occurring after the sale of corporate assets. The district court also erred by granting summary judgment to BNK and Kelly on Blohm's claim concerning access to corporate records.

**Affirmed in part, reversed in part, and remanded.**