This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A15-1706

 Linda “Randee” Wines,
 Appellant,

 vs.

 Jeff Wines, et al.,
 Respondents.

 Filed July 11, 2016
 Affirmed in part, reversed in part, and remanded
 Bjorkman, Judge

 Hennepin County District Court
 File No. 27-CV-15-4615

Kay Nord Hunt, Phillip A. Cole, Deborah C. Swenson, Lommen Abdo, P.A.,
Minneapolis, Minnesota; and

Todd R. Haugan, Haugan Law Office, Wayzata, Minnesota (for appellant)

Joshua A. Hasko, John W. Lang, Messerli & Kramer P.A., Minneapolis, Minnesota (for
respondents Jeff Wines, Brett Wines, and Robert Schmidt)

 Considered and decided by Bjorkman, Presiding Judge; Peterson, Judge; and

Bratvold, Judge.

 UNPUBLISHED OPINION

BJORKMAN, Judge

 Appellant challenges the rule-12 dismissal of her claims, arguing that they are

properly pleaded and timely. Respondents appeal the district court’s denial of their
motion for rule-11 sanctions. We affirm the denial of respondents’ sanction motion, but

otherwise reverse and remand to the district court for further proceedings.

 FACTS

 Appellant Linda Randee Wines (Randee) is the widow of Fred Wines, who

founded United Shipping Company, Inc. Respondents Jeff Wines and Brett Wines are

Fred Wines’s sons and Randee’s stepsons. Respondent Robert Schmidt is a business

associate of Jeff and Brett Wines.

 In 1988, United sought chapter 11 bankruptcy protection. During the bankruptcy

proceeding, respondents assumed United’s management duties. In December 1989, Fred

Wines submitted a final amended reorganization plan that involved canceling all existing

equity interests, securing new capital, and issuing new stock with 26% going to Randee.

The company was renamed Wiseway Distribution Services, Inc. (WDS). When a

potential shareholder failed to exercise his stock purchase option, the shares were

redistributed, leaving Randee with 29.66% (2,966 shares) of WDS’s stock.

 In May 1991, Randee received a letter from respondents’ counsel stating that she

must deliver a $14,811 promissory note by June 14, 1991, in order to receive all of her

shares of WDS stock. The letter indicated that Jeff would pay $10,400 of her capital

contribution, which would give her 12.24% (1,224 shares) of the outstanding stock. On

June 4, Fred Wines sent a letter to Jeff and Brett, reminding them of their 1989 agreement

to pay the capital contribution for Randee’s original 26% of WDS’s stock. In the letter,

Fred Wines warned respondents not to “screw [Randee] out of this interest in the new

company.”

 2
 In June 1993, Randee received another letter from respondents stating that she

owned 12.24% of the WDS stock and informing her about the company’s financial status.

Respondents advised that WDS would reinvest any profits, that it would likely take many

years for the shareholders to see any return on their investments, and that any such

returns would most likely result from a sale of the company. Respondents offered to buy

Randee’s shares for $10,400 and to provide her with information regarding WDS’s

finances. Two months later, Randee responded by mail, questioning respondents’

calculation of her ownership shares and requesting detailed financial information about

the company. Respondents did not honor this request.

 In 2013, Randee investigated WDS’s legal status, discovering that the company

had ceased doing business in 1996 and had been administratively dissolved. She

subsequently learned that respondents had transferred WDS’s operation, assets, and

tradenames to a Wisconsin corporation, Wiseway Motor Freight, Inc. (WMF), which was

registered in Minnesota as a foreign corporation and operated the same business lines. In

response to Randee’s inquiries, respondents’ counsel advised that, as of January 7, 2015,

WDS had been out of business for nearly 20 years, Randee has no interest in WMF, and

that any claims against respondents would be met with counterclaims for sanctions.

 In February 2015, Randee commenced this action seeking relief as a shareholder

under Minn. Stat. §§ 302A.463, .751, subd. 1(b)(2), (3), (5) (2014). She alleged that

respondents, as directors of WDS, violated their fiduciary duties by acting unfairly,

fraudulently, and illegally toward her, and by misapplying or wasting WDS’s corporate

 3
assets. Her amended complaint seeks equitable relief in the form of an accounting and a

buy-out.

 In lieu of answering, respondents moved to dismiss the action under Minn. R. Civ.

P. 12.02, arguing that Randee’s claims are improper because they are derivative and she

did not join WDS, and are time-barred. Respondents also sought sanctions under Minn.

R. Civ. P. 11.03. The district court granted the dismissal motion, but denied respondents’

rule-11 motion, determining that Randee’s claims were not so lacking in merit as to

warrant sanctions.

 Randee appeals the dismissal of her claims. Respondents appeal the denial of their

sanction motion.

 DECISION

I. Randee alleged direct claims against respondents.

 Minn. R. Civ. P. 12.02(f) permits dismissal on the pleadings when a plaintiff fails

to join an indispensable party. An entity on whose behalf a derivative claim is asserted is

an indispensable party. See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S.

518, 522, 67 S. Ct. 828, 831 n.2 (1947); Buckley v. Control Data Corp., 923 F.2d 96, 98

(8th Cir. 1991) (applying Minnesota law). “We review de novo whether a complaint sets

forth a legally sufficient claim for relief. We accept the facts alleged in the complaint as

true and construe all reasonable inferences in favor of the nonmoving party.” Walsh v.

U.S. Bank, N.A., 851 N.W.2d 598, 606 (Minn. 2014) (citation omitted).

 Under Minnesota law, a shareholder may file direct or derivative claims against a

corporation. Wessin v. Archives Corp., 581 N.W.2d 380, 383 (Minn. App. 1998), rev’d

 4
on other grounds, 592 N.W.2d 460 (Minn. 1999). But a shareholder may not bring a

direct action when the claim belongs to the corporation. Stocke v. Berryman, 632

N.W.2d 242, 247 (Minn. App. 2001) (citing Nw. Racquet Swim & Health Clubs, Inc. v.

Deloitte & Touche, 535 N.W.2d 612, 617 (Minn. 1995)), review denied (Minn. Sept. 25,

2001). In order to pursue a direct claim, a shareholder must be able to “allege some

injury or harm that is separate and distinct from the injury or harm to the corporation and

that is not dependent on the harm to the corporation.” Id. We focus on the nature of the

alleged injury when deciding whether a shareholder’s claim is direct or derivative.

Wessin v. Archives Corp., 592 N.W.2d 460, 464 (Minn. 1999).

 Randee asserts that the district court erred in concluding that her claims are

derivative and therefore require joining WDS as an indispensable party. Taking the

allegations of Randee’s amended complaint as true, as we must, respondents failed to

supply financial information that Randee requested and was entitled to as a shareholder,

allowed WDS to be administratively dissolved, transferred WDS’s assets to a new

corporation, and utilized the new corporation to compete in the same market as WDS.

Randee asserts that these actions caused injuries to her as a shareholder that are distinct

from those sustained by WDS. We agree.

 Minn. Stat. § 302A.463 requires corporations to prepare annual financial

statements and give them to individual shareholders upon request. Minn. Stat.

§ 302A.751 (2014) provides that a shareholder whom a corporation has treated unfairly

or illegally may seek equitable relief, including a buy-out. The amended complaint

alleges violations of both statutes. In determining whether these allegations implicate

 5
direct or derivative claims, we are guided by Blohm v. Kelly, 765 N.W.2d 147, 157

(Minn. App. 2009), where a shareholder contended that a corporation violated Minn. Stat.

§ 302A.461 (2008) by denying him access to corporate records. We looked to the statute

which, by its terms, gives shareholders “an absolute right, upon written demand, to

examine and copy” requested records “in person or by a legal representative, at any

reasonable time.” Minn. Stat. § 302A.461, subd. 4(a); Blohm, 765 N.W.2d at 157. In

doing so, we concluded that “[b]ecause the right of access to corporate records is

personal to each shareholder, [appellant] has alleged an injury to himself and, thus, a

direct claim.” Blohm, 765 N.W.2d at 157.

 Like the statute at issue in Blohm, the two statutes Randee seeks relief under create

rights that are personal to individual shareholders. Minn. Stat. §§ 302A.463, .751,

subd. 2. And the harm Randee sustained as a result of respondents’ actions—the

complete loss in value of her shares in WDS—impacted her alone. On these facts, we are

satisfied that Randee pleaded direct claims against respondents. See Wenzel v. Mathies,

542 N.W.2d 634, 641 (Minn. App. 1996) (stating that a shareholder who was not given

notice of issuance of new shares and not allowed an opportunity to buy the new shares

may bring a direct claim), review denied (Minn. Mar. 28, 1996).

II. The six-year statute of limitations contained in Minn. Stat. § 541.05 (2014)
 applies to Randee’s claims.

 Neither Minn. Stat. § 302A.463 nor Minn. Stat. § 302A.751 contain a statute of

limitations. For that reason, the district court applied Minn. Stat. § 541.05, which states:

 6
 Except where the Uniform Commercial Code otherwise
 prescribes, the following actions shall be commenced within
 six years:
 (1) upon a contract or other obligation, express or
 implied, as to which no other limitation is expressly
 prescribed;
 (2) upon a liability created by statute, other than those
 arising upon a penalty or forfeiture or where a shorter period
 is provided by section 541.07;
 ....
 (6) for relief on the ground of fraud, in which case the
 cause of action shall not be deemed to have accrued until the
 discovery by the aggrieved party of the facts constituting the
 fraud[.]

We review the construction and applicability of a statute of limitations de novo. State

Farm Fire & Cas. v. Aquila Inc., 718 N.W.2d 879, 883 (Minn. 2006).

 Randee argues that because her claims are equitable they are not subject to a

statute of limitations. In support of this argument, she cites cases from other jurisdictions

in which courts have held that statutes of limitation do not apply to claims seeking purely

equitable relief. See, e.g., Lake v. Hankin Grp., 79 A.3d 748, 755 (Pa. Cmwlth. 2013)

(stating “statutes of limitation are not controlling in equity, but only provide guidance in

determining the reasonableness of any delay”). We are not persuaded.

 First, in Anderson v. Anderson, our supreme court applied Minn. Stat. § 541.05 to

a derivative shareholders’ action that alleged a corporate officer and director breached

their fiduciary duties. 293 Minn. 209, 218-219, 197 N.W.2d 720, 726 (1972). The

Anderson court did not expressly rule that section 541.05 applied to the plaintiffs’

equitable rescission claims, but the court applied the statute, concluding that plaintiffs

 7
timely commenced the action within six years of reasonably becoming aware of the

misconduct. Id.

 Second, the six-year statute of limitations expressly applies to “liability created by

statute.” Minn. Stat. § 541.05, subd. 1(2). Randee’s amended complaint seeks equitable

relief under two statutes—Minn. Stat. § 302A.463 and Minn. Stat. § 302A.751.

Accordingly, the equitable nature of Randee’s claims does not exempt them from the

statute of limitations contained in Minn. Stat. § 541.05. See Abbott v. McNeff, 171 F.

Supp. 2d 935, 940 (D. Minn. 2001) (holding that Minn. Stat. § 541.05, subd. 1(1),

(2) applies to claims brought under Minn. Stat. § 302A.751).

 Randee next asserts that, even if Minn. Stat. § 541.05 applies, the six-year

limitation period did not begin to run until she discovered respondents’ misconduct in

2014. She relies on subdivision 1(6), which provides that in cases involving fraud “the

cause of action shall not be deemed to have accrued until the discovery by the aggrieved

party.” See Anderson, 293 Minn. at 219, 197 N.W.2d at 726 (“Plaintiffs’ cause of

action . . . did not accrue until they became aware, or should have become aware by

reasonable diligence, of the facts supporting the claim.”). This argument has merit.

 Respondents contend that Randee knew or had reason to know of the reduction in

her stock ownership in 1993. We agree. The amended complaint alleges that Randee

received a letter from respondents in June 1993 stating that she owned 12.24% of WDS’s

stock. This conflicted with her understanding that she held 29.66% of the stock.

Respondents did not respond to Randee’s follow-up letter. On this record, we conclude

that Randee was reasonably aware in June 1993 that respondents had reduced her

 8
ownership by 17.42% (1,742 shares). Because Randee did not commence this action

until 2015, her remedies at trial are limited to recovery based on her 12.24% ownership

of WDS’s stock.

 But we are not persuaded by respondents’ argument that Randee had reason to

know of their other fraudulent behavior because WMF’s formation and WDS’s

administrative dissolution are matters of public record. Whether Randee could have

discovered facts related to these claims by reasonable diligence is a question of fact that

is not appropriate to consider in the context of a rule-12 motion to dismiss. See Murphy

v. Country House, Inc., 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976) (“[T]he

determination of when discovery should reasonably have been made is one of fact.”).

 Finally, we agree with Randee’s assertion that the district court erred in its

alternative holding that Randee’s claims are time-barred by the doctrine of laches.

Laches is an affirmative defense and as such is not a basis for dismissal under rule 12.

See Searles v. Searles, 420 N.W.2d 581, 584 (Minn. 1988) (“The affirmative defenses of

laches and estoppel alleged in defendant’s answer are not put in issue by defendant’s

Rule 12 motion questioning only the sufficiency of plaintiff’s complaint.”). And because

we conclude that Randee’s claims have sufficient merit to preclude rule-12 dismissal, we

affirm the district court’s determination that rule-11 sanctions are not warranted.

 Affirmed in part, reversed in part, and remanded.

 9